2020 IL 125203

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 125203)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v.
SHAWN MARLON BROWN, Appellee.

*Opinion filed November 19, 2020.*

JUSTICE MICHAEL J. BURKE delivered the judgment of the court, with opinion.

Chief Justice Anne M. Burke and Justices Kilbride, Garman, Karmeier, Theis, and Neville concurred in the judgment and opinion.

## OPINION

¶ 1 Following a jury trial, defendant, Shawn Marlon Brown, was convicted of armed robbery (720 ILCS 5/18-2(a)(2) (West 2016)) and aggravated robbery (*id.* § 18-1(b)(1)). The Peoria County circuit court sentenced defendant to 21 years' imprisonment on the armed robbery count. Defendant appealed, arguing, *inter alia*,

that the trial court erred in failing to affirmatively exercise its discretion in determining that defendant was fit to stand trial. The Appellate Court, Third District, with one justice dissenting, agreed with defendant, reversing his conviction and remanding for a new trial. 2019 IL App (3d) 170119-U. For the following reasons, we reverse the judgment of the appellate court.

¶ 2                                    BACKGROUND

¶ 3        Defendant was charged by indictment with one count of armed robbery and one count of aggravated robbery for the robbery of a Family Dollar Store in Peoria, Illinois, in April 2016. On August 29, 2016, the parties appeared before Judge Stephen Kouri for a pretrial conference. At that conference, defense counsel informed Judge Kouri that the defense was ready for trial but informed the court that

> "in speaking with my client just last night, he told me that—of a mental problem that he has had in the past has resurfaced. He's under medication for this, but he had in the past heard voices. He tells me that he is again starting to hear the voices and said that he was having some difficulty in communicating with me.
>
>     This is the first that I've heard of it since I've been representing him, although he did mention to me previously that he had this condition and that it may have factored into the events in question in this case.
>
>     So having been told by my client that he is again having these problems, I'm bringing it to the Court's attention, because I think it may be necessary to do an evaluation to determine whether or not he's fit to stand trial."

¶ 4        When Judge Kouri asked defense counsel if he was asking for a fitness evaluation or thinking about it, defense counsel responded that he was asking for one. Defense counsel explained:

> "I'm asking for it based on the statements by my client. I can tell you it seemed to me that he was understanding most of what I was telling him, but any difficulties were more a matter of education than mental illness. However, he tells me that he has these issues, and I—I can't determine that he's fit just by

myself talking to him. I don't have that ability. So I think that we have to have an evaluation in order to determine whether or not he's fit to stand trial."

¶ 5   When asked his opinion, the assistant state's attorney responded that, because the issue had been raised, he would rather have an evaluation. Judge Kouri then vacated the trial date, ordered an evaluation, and continued the case for 30 days. At the conclusion of the hearing, the assistant state's attorney asked if the "evaluation would just be for fitness." Defense counsel responded, "That's all that I'm asking for is for fitness."

¶ 6   An order was entered, with a box checked next to a preprinted line stating, "Hearing held on People's/Defendant's Motion for:" with the word "fitness" handwritten on a blank space following the preprinted line. The order also stated, "Dr. Finkenbein [*sic*] appointed to conduct mental fitness evaluation" and continued the case for "review" in 30 days.

¶ 7   A fitness report was prepared by Jean Clore, Ph.D., and reviewed by Ryan Finkenbine, M.D. Dr. Clore indicated that defendant was evaluated pursuant to court order for an opinion on defendant's fitness to stand trial. Dr. Clore's opinion was that defendant met the DSM-5 criteria for three psychiatric diagnoses: schizoaffective disorder, bipolar type; posttraumatic stress disorder; and mild intellectual disability. Nonetheless, in Dr. Clore's opinion, defendant had the ability to understand the nature and purpose of the proceedings against him and to assist in his defense. Dr. Clore stated that defendant "required some information for some of the concepts (for example, the number of jurors), but once educated, understood the material and was able to retain the information some time later." Due to defendant's mild intellectual disability, Dr. Clore indicated that "it may be reasonable for his attorney to periodically provide reminders and education during the adjudication of the alleged crime."

¶ 8   At the next court date following Dr. Clore's evaluation, the parties appeared before Judge Jodi Hoos. When the case was called, defense counsel informed the court that the parties were there "on a review of fitness." Defense counsel told the court that Dr. Clore's report found "no reason to believe that [defendant] is unfit to stand trial in any way." Defense counsel further informed the court that he was "looking to have this put back on the calendar for jury trial." The assistant state's attorney indicated that that was his understanding as well. Judge Hoos then stated:

"All right. The Court will acknowledge receipt of the report with the findings contained therein and acknowledge the stipulation if called to testify the doctor would testify consistent to that report."

A written order was entered that day that included the handwritten notation, "fitness report received, parties stipulate to contents of report." The order also set the matter for jury trial and stated, "by agreement—Defendant is fit to stand trial."

¶ 9 As noted, defendant was found guilty of both charges following a jury trial and was sentenced to the statutory minimum of 21 years in prison on the armed robbery count.

¶ 10 Defendant argued on appeal that the trial court failed to affirmatively exercise its judicial discretion to determine defendant's fitness for trial. Defendant claimed that the trial court made no inquiries, conducted no review of the expert's report, and made no factual findings. Rather, the trial court accepted the parties' stipulation to the content of Dr. Clore's report and issued an order finding defendant fit to stand trial by agreement of the parties. Because the trial court failed to exercise any judicial discretion in finding defendant fit, defendant's fitness hearing was constitutionally deficient. Defendant conceded that he had forfeited the issue by failing to object in the trial court but asked the appellate court to review the issue under the plain error doctrine.

¶ 11 The appellate court noted that a defendant's right to be fit for trial is fundamental. *Id.* ¶ 12. The appellate court therefore agreed that issues concerning a defendant's fitness to stand trial are subject to review under the second prong of the plain error doctrine. *Id.*

¶ 12 The appellate court then noted that, when a *bona fide* doubt concerning a defendant's fitness exists, the trial court has a duty to hold a fitness hearing and the record must show an affirmative exercise of judicial discretion with regard to the determination of fitness. *Id.* ¶ 14. The appellate court stated that a trial court cannot base its determination of fitness solely upon a stipulation to the existence of psychiatric conclusions or findings. *Id.* A defendant's due process rights are not violated, however, when a trial court's finding of fitness is also based upon its own observations of the defendant and a review of a psychological report. *Id.* When the parties stipulate concerning what an expert would testify to, rather than to the

expert's conclusions, the trial court may consider that stipulated testimony in exercising its discretion. *Id.*

¶ 13 The appellate court noted that the trial court's written order in this case stated that it found defendant fit " 'by agreement.' " *Id.* ¶ 15. Although the trial court acknowledged that it had received the fitness evaluation report and that the parties had stipulated that Dr. Clore would testify consistently with that report, the trial court did not indicate that it had reviewed the contents of the report or that it was basing its finding of fitness on the stipulated testimony of the doctor. *Id.* In addition, the judge could not rely on her past observations of defendant in determining fitness because she had not presided over prior proceedings involving defendant. *Id.* The appellate court therefore found that the trial court in this case had failed to independently exercise its discretion in finding defendant fit to stand trial. *Id.*

¶ 14 Having found that the trial court did not exercise its judicial discretion in finding defendant fit to stand trial, the appellate court held that the appropriate remedy was to remand the case for a new trial. *Id.* ¶ 17. The appellate court rejected the State's argument that the proper remedy was to remand for a new fitness hearing. Remand for a new trial was warranted because it had been more than two years since defendant's original trial and sentencing and because defendant's condition was not alleged to have been caused by a single, readily assessed factor. *Id.* ¶ 19.

¶ 15 Justice Wright dissented, disagreeing with the majority's finding that the trial court failed to exercise its judicial discretion. *Id.* ¶ 25 (Wright, J., dissenting). The dissent pointed out that the trial court acknowledged receipt of the psychologist's report and the findings contained therein. *Id.* ¶ 27. The dissent would find that the trial court's use of the term "acknowledge" signified the trial court's exercise of discretion. *Id.* Further, the parties merely stipulated that the expert would testify consistently with her report, not to the expert's conclusions. *Id.* A trial court may consider such stipulated testimony when exercising discretion concerning fitness hearings. *Id.*

¶ 16 The State sought leave to appeal pursuant to Illinois Supreme Court Rule 315 (eff. July 1, 2018). The State's petition argued that the appellate court had erred in finding that the trial court failed to exercise its judicial discretion in finding defendant fit to stand trial. In the alternative, the State argued that, even if the trial court did err in failing to exercise its judicial discretion when finding defendant fit

to stand trial, the proper remedy was a remand for a retrospective fitness hearing, not a remand for a new trial.

¶ 17    This court granted the State's petition for leave to appeal.

¶ 18                                    ANALYSIS

¶ 19    A defendant is presumed to be fit to stand trial. 725 ILCS 5/104-10 (West 2016). A defendant is unfit if, because of his mental or physical condition, he is unable to understand the nature and purpose of the proceedings against him or to assist in his defense. *Id.* Fitness speaks only to a defendant's ability to function within the context of a trial and does not refer to competence in other areas. *People v. Eddmonds*, 143 Ill. 2d 501, 519-20 (1991). A defendant may be fit to stand trial even though the defendant's mind is otherwise unsound. *Id.* at 519. Whether a *bona fide* doubt exists is generally a matter within the discretion of the trial court. *People v. Sandham*, 174 Ill. 2d 379, 382 (1996).

¶ 20    A defendant's claims concerning fitness for trial implicate section 104-11 of the Code of Criminal Procedure of 1963 (725 ILCS 5/104-11 (West 2016)). That section provides, in pertinent part:

"(a) The issue of the defendant's fitness for trial, to plead, or to be sentenced may be raised by the defense, the State or the Court at any appropriate time before a plea is entered or before, during, or after trial. When a bona fide doubt of the defendant's fitness is raised, the court shall order a determination of the issue before proceeding further.

(b) Upon request of the defendant that a qualified expert be appointed to examine him or her to determine prior to trial if a bona fide doubt as to his or her fitness to stand trial may be raised, the court, in its discretion, may order an appropriate examination. However, no order entered pursuant to this subsection shall prevent further proceedings in the case. An expert so appointed shall examine the defendant and make a report as provided in Section 104-15." *Id.* § 104-11(a), (b).

¶ 21    The primary distinction between section 104-11(a) and section 104-11(b) is that section 104-11(a) ensures that a defendant's rights are not violated when the trial

court has already found a *bona fide* doubt concerning defendant's fitness to have been raised, while section 104-11(b) aids the trial court in determining whether there is a *bona fide* doubt of fitness. *People v. Hanson*, 212 Ill. 2d 212, 218 (2004). Thus, if a trial court is not convinced that a *bona fide* doubt has been raised, the trial court has the discretion under section 104-11(b) to grant the defendant's request for appointment of an expert to aid in that determination. *Id.* at 217.

¶ 22    In its brief to this court, the State sets forth two reasons why the appellate court erred in holding that the trial court failed to exercise its judicial discretion when it found defendant fit to stand trial. The State first argues that the trial court never found there was a *bona fide* doubt of defendant's fitness, so the trial court had no duty to hold a fitness hearing. In the alternative, the State argues that, assuming the trial court found a *bona fide* doubt concerning defendant's fitness, the record establishes that Judge Hoos did exercise judicial discretion in determining that defendant was fit to stand trial.

¶ 23    In support of its first argument, the State claims that the parties' arguments in the appellate court, and the appellate court's decision, proceeded from the incorrect assumption that Judge Kouri had found a *bona fide* doubt of defendant's fitness when he ordered a fitness evaluation. Although neither defendant nor the trial court cited a specific statute concerning the fitness evaluation, the State suggests that section 104-11(b) applies to the scenario in this case. Pursuant to section 104-11(b), Judge Kouri exercised his discretion to grant defendant's request for appointment of an expert to aid in a fitness determination. The State argues that the mere fact that Judge Kouri ordered a fitness evaluation does not establish that the court found a *bona fide* doubt of defendant's fitness. Absent such a finding, and in light of Dr. Clore's subsequent determination that defendant was fit to stand trial, no fitness hearing was required. Consequently, Judge Hoos committed no error, plain or otherwise, in accepting the parties' stipulation to Dr. Clore's report and then setting the matter for trial.

¶ 24    Defendant responds that the State has waived this argument because it failed to raise this issue in the appellate court or in its petition for leave to appeal. Even if not waived, defendant contends that defense counsel was, in fact, seeking a hearing concerning defendant's fitness to stand trial in requesting a fitness evaluation. Defendant maintains that defense counsel's request for a fitness evaluation was

tantamount to a request for a fitness hearing and did raise a *bona fide* doubt concerning defendant's fitness.

¶ 25    Although defendant frames his argument in terms of waiver, defendant's argument is properly considered in terms of forfeiture. This court in *People v. Sophanavong*, 2020 IL 124337, ¶ 20, observed that the terms forfeiture and waiver have been used at times interchangeably, and often incorrectly, in criminal cases. *Sophanavong* explained the difference between forfeiture and waiver in a criminal case. Waiver is an intentional relinquishment or abandonment of a known right or privilege, while forfeiture is the failure to make the timely assertion of a right. *Id.* A claim of forfeiture raises a question of law, which this court reviews *de novo*. *Id.* ¶ 21.

¶ 26    Defendant relies on the decision in *People v. Carter*, 208 Ill. 2d 309 (2003), in support of his argument. In *Carter*, the appellate court held that the trial court had committed reversible error in failing to *sua sponte* issue an involuntary manslaughter instruction to the jury. *Id.* at 312. On appeal to this court, the State argued that the facts of the case did not warrant an involuntary manslaughter instruction. *Id.* at 318. Arguing in terms of waiver, the defendant responded that the State had waived that argument. *Id.* The defendant noted that his argument in the appellate court was that the evidence supported an involuntary manslaughter instruction. *Id.* The State did not respond to that argument in the appellate court. *Id.* The State's petition for leave to appeal also did not challenge the appellate court's finding that the evidence warranted an involuntary manslaughter instruction. *Id.* The State first raised the issue in its brief to this court, after this court granted the State's petition for leave to appeal. *Id.* This court held that the issue was waived, as the State repeatedly failed to raise or address the argument. *Id.* at 318-19.

¶ 27    Defendant argues that *Carter* controls in this case. Defendant points out that he challenged his fitness hearing in the appellate court, raising the argument that Judge Hoos did not exercise her judicial discretion in finding him fit for trial. The State, however, never raised any issue in the appellate court regarding defendant's entitlement to a fitness hearing. Nor did the State raise an issue in the appellate court concerning whether there was a *bona fide* doubt of defendant's fitness. In addition, the State's petition for leave to appeal did not challenge the appellate court's finding that defendant was entitled to a fitness hearing. As in *Carter*, the

State had multiple opportunities to address this argument but failed to do so. The State thus tacitly acknowledged that a *bona fide* doubt existed. The State, therefore, has forfeited any argument to the contrary.

¶ 28    The State responds that defendant's reliance on *Carter* is misplaced. The defendant in *Carter* had argued in the appellate court that the trial evidence warranted an involuntary manslaughter instruction. Nonetheless, the State failed to respond to that argument and did not raise the argument in its petition for leave to appeal. In this case, in contrast, defendant never argued in the appellate court that he had established a *bona fide* doubt of his fitness. Defendant's arguments in the appellate court instead proceeded from the assumption that Judge Kouri had found a *bona fide* doubt of fitness in ordering defendant's fitness evaluation. The State's appellate brief responded to the claim as defendant presented it. The State cannot now be faulted for failing to respond to a *bona fide* doubt argument that defendant never raised.

¶ 29    We agree with the State that its failure to raise the issue in the appellate court in this case is distinguishable from the State's failure to do so in *Carter*. Here, the issue of whether the trial court found a *bona fide* doubt of defendant's fitness was never raised in the appellate court. It is well settled that, when the appellate court reverses the judgment of the trial court and the appellee in the appellate court then brings the case to this court on appeal, that party may raise any issues properly presented by the record to sustain the judgment of the trial court, even if those issues were not raised in the appellate court. *People v. Artis*, 232 Ill. 2d 156, 164 (2009).

¶ 30    With regard to the State's failure to raise the issue in its petition for leave to appeal, defendant is correct that this court has denied consideration of a claim where the party failed to include the claim in its petition for leave to appeal. See, *e.g.*, *People v. Whitfield*, 228 Ill. 2d 502 (2007); *People v. Robinson*, 223 Ill. 2d 165 (2006); *Carter*, 208 Ill. 2d 309. This court in *In re Rolandis G.*, 232 Ill. 2d 13, 37 (2008), however, cautioned that those decisions should not be interpreted as holding that the failure to include an issue in a petition for leave to appeal stands as an absolute bar to review by this court.

¶ 31    The failure to raise an issue in a petition for leave to appeal is not a jurisdictional bar to this court's ability to review an issue but instead is a principle of administrative convenience. *Id.* Consequently, this court has the discretion to

review or to decline to review a matter not properly preserved. *Id.* This court has recognized that review of an issue not specifically mentioned in a petition for leave to appeal will be appropriate when that issue is "inextricably intertwined" with other matters properly before the court. (Internal quotation marks omitted.) *People v. McKown*, 236 Ill. 2d 278, 310 (2010).

¶ 32    In this case, the issue properly before this court is whether the trial court erroneously failed to exercise its judicial discretion in finding defendant fit to stand trial. We find that the issue of whether the trial court found a *bona fide* doubt as to defendant's fitness to stand trial is inextricably intertwined with the issue of whether the trial court committed plain error in finding defendant fit to stand trial. Consequently, we will address the State's claim that the trial court did not find a *bona fide* doubt concerning defendant's fitness to stand trial, so that the trial court did not err in setting the case for trial without conducting a fitness hearing.

¶ 33    In this case, defense counsel orally moved for an evaluation to determine whether defendant was fit for trial. Defense counsel stated that it seemed that any difficulties were more a matter of education than mental illness, but defendant had told defense counsel the previous night that he was starting to hear voices and was having some difficulty in communicating with counsel. Defense counsel thought he should have an evaluation in order to determine whether or not defendant was fit to stand trial. The assistant state's attorney agreed, so the trial court ordered an evaluation. The trial court's written order stated, "Dr. Finkenbein [*sic*] appointed to conduct mental fitness evaluation."

¶ 34    Defendant interprets his counsel's request for a fitness evaluation as raising a *bona fide* doubt concerning defendant's fitness. We agree with the State that our decision in *Hanson*, 212 Ill. 2d 212, is directly on point on this issue. *Hanson* held that the "mere act of granting a defendant's motion for a fitness examination cannot, by itself, be construed as a definitive showing that the trial court found a *bona fide* doubt of the defendant's fitness." *Id.* at 222.

¶ 35    Similar to this case, the defense counsel in *Hanson* filed a pretrial motion requesting that the defendant be examined by an expert to determine his fitness to stand trial as well as his mental condition at the time of the alleged offense. *Id.* at 215. The State did not object to the defense counsel's motion, so the trial court granted the motion and changed the previously scheduled trial date to a date for the

fitness hearing. *Id.* After the exam was completed, the defense counsel informed the trial court that the defendant had been found fit and withdrew the motion. *Id.* The expert's report was not admitted into evidence. *Id.* The defendant later was convicted and sentenced. *Id.*

¶ 36    On appeal, a majority of the appellate court found plain error, holding that the grant of a fitness examination implicitly demonstrated the trial court's *bona fide* doubt concerning the defendant's fitness for trial, necessitating a fitness hearing. *Id.* at 215-16. Therefore, the majority held that, because *bona fide* doubt was present, the trial court was obliged to hold a fitness hearing, even after the defense counsel withdrew his motion. *Id.*

¶ 37    This court reversed the appellate court, rejecting the appellate court's conclusion that granting a defendant's motion for fitness examination implicitly demonstrates the belief that a *bona fide* doubt of fitness existed. *Id.* at 225. The court explained:

    "Sections 104-11(a) and (b) may be applied in tandem or separately, depending on if and when the trial court determines a *bona fide* doubt of fitness is raised. If the trial court is not convinced *bona fide* doubt is raised, it has the discretion under section 104-11(b) to grant the defendant's request for appointment of an expert to aid in that determination. [Citation]. Even for a motion filed under section 104-11(a), the trial court could specify its need for a fitness examination by an expert to aid in its determination of whether a *bona fide* doubt is raised without a fitness hearing becoming mandatory. In either instance, after completion of the fitness examination, if the trial court determines there is *bona fide* doubt, then a fitness hearing would be mandatory under section 104-11(a). [Citations.] Conversely, if after the examination the trial court finds no *bona fide* doubt, no further hearings on the issue of fitness would be necessary." *Id.* at 217.

¶ 38    In reversing the appellate court, *Hanson* held that the defendant never requested a fitness hearing at any point in the proceeding and instead only requested the scheduling of a psychological examination by an expert appointed " 'to determine the Defendant's fitness to stand trial, as well as her [*sic*] mental condition at the time of the alleged offense.' " *Id.* at 221. *Hanson* rejected the defendant's claim

- 11 -

that the defendant's attempt to continue the proceedings necessarily implied that he was also seeking a fitness hearing. *Id. Hanson* explained:

> "The plain language of the motion clearly states that it sought to have defendant examined by an expert. It does not mention a fitness hearing. By its very language, the motion fails to imply that defendant was seeking a fitness hearing in addition to a fitness evaluation. We will not read such an implication into an otherwise clear motion." *Id.*

¶ 39    The State argues that in this case, as in *Hanson*, defense counsel never requested a fitness hearing, nor did the court order one. The trial court simply ordered an evaluation and set a date to review the results of the evaluation. When the parties returned to court following the evaluation, defense counsel informed the court that Dr. Clore's report found "no reason to believe that [my] client is unfit to stand trial in any way. And so we are looking to have this put back on the calendar for jury trial." The trial court then acknowledged receipt of the report with the findings contained therein and acknowledged the stipulation that, if called to testify, the doctor would testify consistently with that report. The State asserts that nothing in any of the proceedings could be construed as evidence that the trial court found a *bona fide* doubt of defendant's fitness. Consequently, no fitness hearing was necessary, so that the court did not commit error, let alone plain error, in proceeding to trial.

¶ 40    We agree. Defense counsel never indicated that he had a *bona fide* doubt concerning defendant's fitness at the hearing before Judge Kouri. In fact, defense counsel told Judge Kouri that it seemed defendant understood most of what counsel was telling him, but in light of defendant telling counsel of his mental health issues, counsel thought he should have an evaluation to determine whether defendant was fit to stand trial. When the assistant state's attorney asked if the evaluation would just be for fitness, defense counsel replied, "[t]hat's all that I'm asking for is for fitness." Defense counsel never mentioned or requested a fitness hearing in addition to the fitness evaluation.

¶ 41    Likewise, Judge Kouri's order granting defendant's motion for a fitness evaluation made no reference to a *bona fide* doubt concerning defendant's fitness, nor did the order reference a fitness hearing. The order simply stated that Dr. Finkenbine was appointed to conduct a mental fitness evaluation and continued the

case for "review" in 30 days. As the State argues, there is no basis to conclude that counsel requested, or that Judge Kouri ordered, a fitness hearing.

¶ 42 Further, when the parties returned to court following Dr. Clore's evaluation, defense counsel informed Judge Hoos that the parties were there on a "review of fitness." Defense counsel also noted that he had tendered a copy of Dr. Clore's report to the court and observed that Dr. Clore had found "no reason to believe that my client is unfit to stand trial in any way." Defense counsel then stated that he was "looking to have this put back on the calendar for jury trial." Judge Hoos acknowledged receipt of the report and acknowledged the parties' stipulation that Dr. Clore would testify consistently with that report.

¶ 43 It is clear from the record, then, that neither the parties nor the trial court had a *bona fide* doubt of defendant's fitness, either at the time that Judge Kouri appointed Dr. Finkenbine to examine defendant or 30 days later when defense counsel tendered Dr. Clore's report to Judge Hoos. Defense counsel never stated at any point in the proceeding that he had a *bona fide* doubt of defendant's fitness to stand trial, the trial court never made such a finding, and no party ever requested a fitness hearing. Absent a *bona fide* doubt concerning his fitness to stand trial, defendant was not entitled to a fitness hearing before Judge Hoos. Accordingly, the trial court did not commit any error, let alone plain error, in setting the case for trial without conducting a fitness hearing. The appellate court thus erred in reversing defendant's conviction and remanding for a new trial on the basis that the trial court failed to exercise its judicial discretion in finding defendant fit for trial.

¶ 44                                    CONCLUSION

¶ 45 For all of the foregoing reasons, we reverse the judgment of the appellate court and affirm the judgment of the circuit court.

¶ 46 Appellate court judgment reversed.

¶ 47 Circuit court judgment affirmed.

- 13 -