NOTICE

Decision filed 01/30/23. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2023 IL App (5th) 210014-U

NO. 5-21-0014

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Effingham County. |
| | ) | |
| v. | ) | No. 20-CF-124 |
| | ) | |
| TARA B. SZAREK, | ) | Honorable |
| | ) | Martin W. Siemer, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE WELCH delivered the judgment of the court.
Justices Barberis and Vaughan concurred in the judgment.

**ORDER**

¶ 1    *Held*: The judgment of the trial court is affirmed where (1) the court did not abuse its discretion in denying the defendant leave to withdraw her guilty plea, or in the alternative, to reduce her sentence; (2) the certificate filed by plea counsel complied with the requirements of Illinois Supreme Court Rule 604(d) (eff. July 1, 2017); (3) the court conducted an adequate inquiry into the defendant's postplea claims of ineffective assistance; and (4) there was no *bona fide* doubt as to her fitness. The defendant's appointed counsel on appeal is granted leave to withdraw.

¶ 2    The defendant, Tara B. Szarek, entered an open plea of guilty to aggravated battery of a correctional officer and was sentenced to three years in prison. The defendant thereafter sought to withdraw her plea and vacate the sentence, or in the alternative, to reduce her sentence, and raised postplea claims of ineffective assistance of counsel. The trial court denied the defendant relief, and she now appeals.

1

¶ 3    The defendant's appointed attorney, the Office of the State Appellate Defender (OSAD), has concluded that this appeal lacks merit. Accordingly, OSAD filed a motion for leave to withdraw as counsel (see *Anders v. California*, 386 U.S. 738 (1967)), along with a memorandum in support of the motion. OSAD provided the defendant with a copy of its *Anders* motion and memorandum. The court has provided defendant with the opportunity to file a written *pro se* response explaining why this appeal has merit. The defendant has not filed a response. Having reviewed OSAD's *Anders* motion and memorandum, and the entire record on appeal, this court concludes that the instant appeal does indeed lack merit. Accordingly, we grant OSAD leave to withdraw and affirm the judgment of the trial court.

¶ 4                                                      BACKGROUND

¶ 5    On May 29, 2020, the defendant was charged by information with one count of aggravated battery alleging that on May 28, 2020, she struck correctional officer Steven Langhorst on or about the body, knowing that Langhorst was a correctional officer engaged in his duties. 720 ILCS 5/12-3.05(d)(4) (West 2020). A bill of indictment was filed on June 17, 2020.

¶ 6    On July 29, 2020, the State told the trial court that the defendant had agreed to enter an open guilty plea to the charge, and in exchange the State would dismiss the charges in case Nos. 20-CF-71, 20-CF-75, and 20-CF-115, and agree to the defendant's release that day. The trial court asked the defendant and plea counsel whether that was their understanding of the plea agreement, and both answered in the affirmative.

¶ 7    The trial court then explained to the defendant that she was charged with the Class 2 felony of aggravated battery for knowingly causing bodily harm to Langhorst, a correctional officer engaged in his official duties. The offense was punishable by 3 to 7 years in prison, and an

2

extended-term sentence of 7 to 14 years. The court asked whether the defendant understood the offense and possible penalties, and she answered yes to both questions.

¶ 8     The court then explained that by entering a guilty plea, the defendant waived certain rights, including the right to plead not guilty and to a trial by a judge or jury. The court added that a trial is a proceeding in court where the State would present evidence against the defendant and must prove her guilty beyond a reasonable doubt. At trial, the defendant would be presumed innocent, could confront and cross-examine her "accusers," and would have the right against self-incrimination. While the defendant would not have to present a defense, she could present evidence and witnesses, and testify on her own behalf. The defendant also had the right to a speedy trial. The trial court asked whether the defendant understood that if she entered a guilty plea, she waived those rights and would not have a trial. The defendant stated that she understood.

¶ 9     The trial court then asked whether the defendant understood that by pleading guilty there would be a hearing to determine her sentence rather than a trial, and the defendant stated she understood. The court asked the defendant how she pled to the Class 2 offense of aggravated battery, and she answered guilty. The defendant identified her signature on the written plea agreement. The court asked whether she understood that by signing and submitting the plea agreement, she was entering a guilty plea and waiving the previously discussed rights. The defendant answered in the affirmative.

¶ 10     The court next asked whether anyone threatened, intimidated, or forced the defendant to enter a plea and she said no. She also denied that any promises, other than those discussed in open court, induced her to plead guilty. The court found that the defendant knowingly and voluntarily pled guilty, and asked for the factual basis for the plea.

¶ 11    The State related that on May 28, 2020, while incarcerated, the defendant became disruptive. When attempts were made to calm her, she made contact with or struck Langhorst, causing him to fall and suffer an injury. The court asked plea counsel and the defendant whether they objected to these facts, and both answered no. The court found a factual basis for the plea.

¶ 12    The court then told the defendant that this was her "last chance" to change her mind and asked whether she "thought through" entering a plea. The defendant answered yes, and stated that she discussed the plea with her attorney. The court asked again whether she wanted to "stand by" the guilty plea, and she answered yes. The court then found the defendant guilty of the Class 2 offense of aggravated battery and ordered a presentence investigation.

¶ 13    The record contains a "Plea of Guilty and Waiver of Jury Trial," dated July 29, 2020, and signed by the defendant. The document states that

> "I, the undersigned Defendant enter my plea of Guilty to the Indictment. I understand that I am entitled to plead not guilty and have a jury trial or a bench trial (by a Judge). I am pleading guilty and waiving, or giving up, my right to a jury or bench trial. I am asking the Judge to accept my plea of guilty and impose a sentence upon me."[1]

¶ 14    The defendant was released from custody and ordered to report to probation. The cause was continued for sentencing on September 21, 2020.

¶ 15    A presentence investigation (PSI) report filed on September 14, 2020, stated that the defendant failed to report for "multiple" interviews. The PSI report listed defendant's criminal history which included convictions for retail theft, disorderly conduct, residential burglary, and theft. The defendant had a seven-year-old daughter, but was not the primary caregiver.

---

[1]The word "Indictment" is handwritten, and a line for the defendant's age is blank.

4

¶ 16     The defendant did not appear at the sentencing hearing, and a warrant was issued for her arrest. On September 22, 2020, the defendant, who was in custody, appeared before the trial court via video feed. She stated that she was to be sentenced for "something" she did not do, renounced her citizenship, and asked to be sent "anywhere else." The court ordered another PSI report and continued the case.

¶ 17     A second PSI report was filed on October 26, 2020, stating the defendant was interviewed in the jail on September 28, 2020. She completed the eleventh grade, and wanted to continue her education. The defendant stated that she had no significant physical health concerns, and used alcohol and marijuana socially. The defendant was not undergoing mental health treatment, but stated that incarceration took a "toll" on her "emotional stability." The defendant denied committing the offense and stated that the criminal justice system was "broken" and did "more harm than good." She believed that probation would be "fair and beneficial," and permit her to "get back in" her child's life. The defendant did not believe that incarceration would have any "positive impact," as it would cause her to hate the criminal justice system more.

¶ 18     On October 29, 2020, the trial court held a sentencing hearing. The court asked the defendant whether she was under any physical or mental disability, or taking any medication or substance that would affect her ability to understand the proceedings, and she said no. The defendant stated that she had time to prepare for sentencing, but had not spoken to her attorney. When the court asked whether she was satisfied with the services provided by plea counsel, she stated he had "too wide" a caseload to meet her needs, and asked to be heard on that issue. The trial court told the defendant that she would have that opportunity "later."

¶ 19    Plea counsel asked that the PSI report be corrected to reflect, in pertinent part, that the defendant was not convicted of residential burglary, obtained a GED, and previously worked as a manager in events planning.

¶ 20    The court then explained that the defendant entered an open plea, and confirmed that the defendant was not subject to an extended-term sentence.

¶ 21    In aggravation, the State presented Effingham County deputy sheriff Brandon Murray, who testified that on April 9, 2020, he spoke to Effingham County correctional officer John Hanna. Hanna related that while he was conducting "cell checks," the defendant threw an unknown liquid at him. Murray then viewed jail security footage depicting the defendant throwing liquid at Hanna. During cross-examination, Murray acknowledged that Hanna did not know who threw the liquid until he reviewed the footage and saw the defendant's action.

¶ 22    Effingham County sheriff's department sergeant John Long testified that on August 2, 2020, he received a complaint that the defendant was trying to enter the jail to see her boyfriend. She refused officers' requests to leave, and then made "snow angels" in a mud puddle and climbed a tree. When Long could not convince the defendant to descend the tree, the fire department was contacted. When the defendant still refused to descend, Long dispersed the crowd of people and left, hoping the defendant would choose to come down. After the defendant climbed down, Long decided to take the defendant for a psychiatric evaluation. The defendant resisted as Long and fellow officers tried to handcuff her, but no criminal charges arose from the incident.

¶ 23    Effingham County investigation supervisor Darin Deters testified that a woman named Donna Banning told him that a pickup truck was stolen from her home and later discovered abandoned on I-57. Banning further told Deters that she spoke to a truck driver who picked up the defendant and the defendant's minor child "along the interstate." Banning did not know the

defendant personally, but had a "passing knowledge of her." Deters spoke to the child, who stated that the defendant took a white pickup truck while on a "hike." The child described a vehicle that matched the one taken from Banning, who had not given anyone permission to take it.

¶ 24   The State recommended a five-year prison term, in the "middle" of the applicable sentencing range, noting the defendant's "history of criminal activity" and the need to deter inmates from attacking corrections staff. The State also noted the defendant's prior failure to appear. Plea counsel argued that the defendant was young with rehabilitative potential and her incarceration would cause hardship to her child. Counsel also asked the court to consider in mitigation that the defendant entered a guilty plea, and consider impact incarceration.

¶ 25   The defendant then stated that it was "unconscionable, unjustifiable, and unwarranted" that counsel and the court met without her and defamed her character, and it was "hard" for plea counsel to represent her properly. The defendant asserted that she was taking a "stand" against a bully, and discussed topics including the 1968 Democratic National Convention, George Floyd, the portrayal of Russia and China as "the enemy," and the impact of greed and fear on humanity. The defendant thanked correctional officers, including Langhorst, for their kindness, read the Declaration of Independence into the record, asserted that she never had a "fair" or "real" trial, and concluded that she wanted to withdraw her plea. She stated that she only pled guilty because she wanted to exit jail and "lied" when she said she was not "bullied" into pleading guilty.

¶ 26   In sentencing the defendant, the trial court considered the record, the factual basis, the PSI reports, the defendant's history, character, and attitude, the parties' arguments, and the defendant's statement. The court further noted the defendant's conduct caused serious harm as Langhorst went to the hospital, and while the defendant had only one prior felony conviction, she had a history of

criminal activity. The court noted that it did not consider the events where charges were dismissed or not brought.

¶ 27 The court observed that the defendant had a young daughter whom she took on "questionable adventures," and no other evidence addressed the mother-child relationship. Although there were "hints" as to the defendant's mental stability, the PSI made no reference to mental illness. The court thanked the defendant for her statement, but found little of "direct relevance." The court acknowledged a cost to confining the defendant, but concluded that probation would "depreciate" the seriousness of the offense. The court therefore imposed a sentence of three years in prison.

¶ 28 The court told the defendant that she had the right to an appeal, but in order to appeal, she must file in the circuit court within 30 days a written motion to withdraw her plea and vacate the judgment or to reconsider sentence stating her "grounds." If the motion were allowed, the sentence would be modified, or the guilty plea would be vacated and a trial set. The State could reinstate dismissed charges. The defendant could receive a copy of the relevant transcripts and counsel to assist in preparing the motion. Any claims not raised in the motion would be waived. The court asked whether the defendant understood that she had 30 days to act, and she said yes.

¶ 29 On November 16, 2020, the defendant filed, through plea counsel, a postplea claim of ineffective assistance pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984), alleging that plea counsel told her she did not have to attend the sentencing hearing, neglected her case, and refused to show her the evidence against her.

¶ 30 On November 30, 2020, the trial court held a preliminary *Krankel* inquiry. The defendant stated that she did not believe that she received effective assistance when a "lot" of the evidence she requested was not given to her and two other sets of prints were recovered from the allegedly

8

stolen vehicle. Additionally, plea counsel did not present an alibi defense or provide her with law books and a copy of the constitution, did not place "request forms" in the file, and was unreachable. The defendant made appointments through plea counsel's secretary, but was not always able to attend them.

¶ 31　The trial court reminded the defendant that she pleaded guilty to aggravated battery and asked what specific material she requested regarding that charge. The defendant responded that she did not "really" request anything, did not know that the officer was hurt until "later," and was not sure what the court was asking. The defendant stated that when she asked to go *pro se*, she was told by correctional officers that she had to ask her attorney, and contacting plea counsel was "next to impossible." During her "evaluation," a doctor told her that plea counsel was paid the same salary regardless of caseload and was a "good guy" and an attorney. However, a "lot" of inmates did not feel "well represented" and had "nothing kind to say." She believed there was insufficient evidence against her in the stolen vehicle case, and had she not been arrested in that case, "nothing else afterwards" would have occurred.

¶ 32　Regarding the guilty plea in this case, the defendant discussed it "briefly" with plea counsel, but did not "really understand what was going on." The defendant asserted that her plea was due to "force and intimidation" from being incarcerated for "so long." She further stated that "guilty or not," anyone would plead after being in jail "long enough." The defendant remembered the court asking if she discussed the plea with plea counsel and her answer. She "swallow[ed]" her pride and lied because she was told that if she pleaded guilty, she would be released, and other charges would be dropped. She only "sort of" understood the charge and did not remember the sentencing range being explained. Plea counsel told her that she did not have to attend her sentencing, although those "may not have been his words exactly."

9

¶ 33 The court then asked plea counsel to respond. Plea counsel stated that supreme court rules prevented him from copying evidence to give to defendants. See Ill. S. Ct. R. 415(c) (eff. Oct. 1, 1971). He further stated that he had updated the defendant regarding plea negotiations. When an agreement was reached, plea counsel had a "lengthy conversation" with the defendant about the nature of an open plea and the importance of cooperation in the preparation of the PSI report. During this one-hour to two-hour meeting, plea counsel and the defendant reviewed evidence including footage of the alleged offense. Plea counsel told the defendant that if she did not attend the sentencing hearing, it would proceed in her absence. In a letter to the defendant, plea counsel detailed the plea agreement, the possible sentencing ranges, and the importance of cooperating in the presentence investigation and appearing at sentencing. He suggested that the defendant gather mitigation evidence and meet with him prior to sentencing, but she did not make an appointment. On the day of the plea, they met for a few minutes to verify that the defendant received his letter and still wanted to enter the plea, which she did.

¶ 34 When the court asked the defendant's response, she stated that the meeting in the jail lasted 10 minutes. She and plea counsel did not discuss the open plea, but watched footage. She believed that she received the letter and spoke to plea counsel immediately before entering the plea, but asserted she did not "fully understand" what was happening. The defendant scheduled a presentencing appointment with counsel, but did not attend because she lacked a phone or transportation.

¶ 35 The trial court found no factual basis for the defendant's claims of ineffective assistance, noting that her assertion that plea counsel told her she did not have to attend the sentencing hearing was contradicted by a letter that she admitted she received. The court noted for the record that when the letter was mentioned during the hearing that day, the defendant looked at plea counsel,

reviewed the letter, and acknowledged that she had received it. Additionally, plea counsel explained why he could not give the defendant evidence and detailed the discussions that preceded the plea, which were corroborated by the defendant's acknowledgment that she and plea counsel viewed the footage. The court did not find it "unusual or neglectful" that the defendant had to schedule an appointment to see plea counsel. The court therefore declined to appoint new counsel.

¶ 36     On that same day, through plea counsel, the defendant filed a motion to withdraw the guilty plea and vacate the sentence, or in the alternative, to reconsider sentence. The motion alleged that the defendant's guilty plea was not knowingly and voluntarily entered, that the plea was the result of force, threats, or coercion, and that she did not understand the rights she waived by pleading guilty or the consequences of the plea. The motion also alleged that the sentence was excessive and did not adequately consider the evidence in mitigation or the alternatives available.

¶ 37     On January 8, 2021, plea counsel filed a certificate pursuant to Illinois Supreme Court Rule 604(d) (eff. July 1, 2017), stating that he consulted with the defendant in person, by mail, by phone, or by electronic means to ascertain her contentions of error in the guilty plea and sentence, examined the court file and the reports of proceedings from the plea and sentencing hearings, and amended the motion as necessary for an adequate presentation of any defects in the proceedings.

¶ 38     On January 15, 2021, the court held a hearing on the motion. The defendant acknowledged that when she entered the plea, other charges were dismissed, there was no agreement on a sentence, and she knew she could assert her innocence and proceed to trial. However, she did not fully understand that the State had the burden to prove her guilty and stated that her plea was the result of force. She felt threatened because she had not committed the offense, and "no matter" what she said, "the State would *** force" her back into jail. The defendant had collected letters from other individuals who stated that they pled guilty in order to leave jail.

11

¶ 39   The State objected to these letters. Before the court could rule on the objection, the defendant stated that she based her decision to plead guilty on "testimonies" from other inmates. The State again objected to "hearsay" evidence. Plea counsel replied that the defendant was not offering this testimony for the truth of the matter asserted, but rather to explain the effect certain statements had on her. The court agreed to consider this testimony as "background information." The defendant then alleged that the "whole case" was based on hearsay. Moreover, correctional officers, prosecutors, public defenders, and judges were on the State's "payroll," and she was threatened by her "lack of trust" in those parties. Her plea was therefore involuntary, and she wished to withdraw it.

¶ 40   In closing argument, plea counsel asked that the defendant be allowed to withdraw her guilty plea because she felt coerced by her incarceration and "distrust of the system." Also, she expressed a lack of understanding of the types of trials and the State's burden of proof. The State responded that the defendant had the opportunity to express her concerns at the time of the plea, but "simply" did not like the results of her guilty plea. The defendant then stated that she had more evidence and had asked to proceed *pro so* during trial, but received no "feedback."

¶ 41   In denying the defendant leave to withdraw her guilty plea, the court noted that she had "every opportunity" to speak, address issues through counsel, and present evidence. The court found that the defendant was admonished of her rights at the time of the plea and indicated that she understood. She also discussed the plea with her attorney, and chose to "continue." Therefore, the plea was knowingly and voluntarily entered. The court believed that the defendant had a full understanding of the plea, although the court had some "concern" about her fitness after her behavior "later in the process." That concern was assuaged as the defendant was found fit in a "separate case" in January 2020, and came across as well-spoken and aware of her rights.

¶ 42    Turning to defendant's sentence in this case, the court stated that it reviewed the sentencing hearing transcript and believed all relevant factors were considered. Based on the defendant's background, the court determined probation was not appropriate and imposed the statutory minimum three-year sentence.

¶ 43                                  ANALYSIS

¶ 44    In its motion to withdraw, OSAD identifies five potential issues which could be raised on appeal but which it concludes have no arguable merit. Counsel considered (1) whether the trial court abused its discretion by denying the defendant leave to withdraw her guilty plea; (2) whether the court erred in denying the motion to reduce sentence; (3) whether the certificate that plea counsel filed complied with the requirements of Illinois Supreme Court Rule 604(d) (eff. July 1, 2017); (4) whether the trial court properly conducted a preliminary *Krankel* hearing; and (5) whether there was a *bona fide* doubt as to the defendant's fitness.

¶ 45    Due process requires that a guilty plea must be knowing and voluntary. *People v. Kidd*, 129 Ill. 2d 432, 443 (1989). Accordingly, Illinois Supreme Court Rule 402(a) requires that, prior to accepting a guilty plea, the trial court admonish the defendant (1) of the nature of the charge; (2) of the minimum and maximum sentence and whether the defendant is subject to extended-term or consecutive sentencing; (3) that the defendant has the right to plead not guilty; and (4) that if the defendant pleads guilty there will not be a trial of any kind, so that by pleading guilty she waives the right to a trial by jury and the right to be confronted with the witnesses against her. Ill. S. Ct. R. 402(a) (eff. July 1, 2012). The trial court must substantially comply with the requirements of Illinois Supreme Court Rule 402. *People v. Whitfield*, 217 Ill. 2d 177, 195 (2005).

¶ 46    A defendant does not have the "automatic right" to withdraw her guilty plea. *People v. Delvillar*, 235 Ill. 2d 507, 520 (2009). "Leave to withdraw a guilty plea is granted not as a matter

13

of right, but only as required to correct a manifest injustice under the facts involved." *People v. Ferral-Mujica*, 2017 IL App (2d) 160240, ¶ 22. A defendant should be allowed to withdraw a guilty plea and plead not guilty if

> " 'it appears that the plea *** was entered on a misapprehension of the facts or of the law, or in consequence of misrepresentations by counsel or the State's Attorney or someone else in authority, or the case is one where there is doubt of the guilt of the accused, or where the accused has a defense worthy of consideration by a jury, or where the ends of justice will be better served by submitting the case to a jury.' " *People v. Davis*, 145 Ill. 2d 240, 244 (1991) (quoting *People v. Morreale*, 412 Ill. 528, 531-32 (1952)).

¶ 47 Whether a defendant is permitted to withdraw a guilty plea rests within the trial court's discretion. *People v. Hughes*, 2012 IL 112817, ¶ 32. An abuse of discretion will be found only if the trial court's determination "is arbitrary, fanciful, unreasonable, or no reasonable person would take the [same] view." *Delvillar*, 235 Ill. 2d at 519.

¶ 48 Here, the trial court admonished the defendant in open court in compliance with Illinois Supreme Court Rule 402(a), when it told the defendant that she was charged with the Class 2 offense of aggravated battery, which was punishable by 3 to 7 years in prison and an extended-term sentence of 7 to 14 years. The court further told the defendant that by pleading guilty she waived the right to a trial by a judge or jury, and to have the State prove her guilty beyond a reasonable doubt. If the defendant went to trial, she would be presumed innocent and could present a defense, cross-examine witnesses, and choose not to testify. The court asked the defendant whether she understood the offense and possible penalties, and she answered yes to both questions. The court also asked the defendant whether she understood that if she pled guilty, there would not

14

be a trial, and she stated that she did. Finally, the court stated that rather than a trial, there would be a hearing to determine the defendant's sentence, and the defendant stated that she understood.

¶ 49　The defendant also told the court that she understood that by signing the written plea agreement, she waived the previously discussed rights. Finally, the defendant denied being threatened or intimidated into pleading guilty and agreed that the only promises which induced her to plead guilty were those discussed in court.

¶ 50　While the motion to withdraw the plea alleged that the defendant's guilty plea was not knowing and voluntary, the record reveals that the trial court explained the charge and the possible prison terms, and admonished the defendant in compliance with Illinois Supreme Court Rule 402(a). See *People v. Artale*, 244 Ill. App. 3d 469, 475 (1993) (where the record refutes assertions that a plea was not knowing and voluntary, the court may deny a motion to withdraw the plea, as the "proper and meticulous admonition" of a defendant "cannot simply be ignored").

¶ 51　The defendant testified at the hearing on the motion to withdraw the plea that she was coerced into pleading guilty because she had been in jail for a long time and did not trust the system or fully understand the State's burden of proof. See *Davis*, 145 Ill. 2d at 244 ("subjective impressions alone are not sufficient grounds on which to vacate a guilty plea"). However, she also acknowledged that (1) by entering the plea other charges were dismissed, (2) there was no agreement on a sentence, and (3) she knew that she could assert her innocence and proceed to trial. Additionally, plea counsel testified he updated the defendant throughout plea negotiations, reviewed the plea with her in person and in a letter, and verified on the day of the plea hearing that she wanted to enter a plea.

¶ 52　We agree with OSAD that because the trial court substantially complied with Illinois Supreme Court Rule 402(a), no meritorious argument could be raised on appeal regarding the

15

admonishments. Additionally, as the defendant cannot meet her burden "to establish that the circumstances existing at the time of the plea, judged by objective standards, justified the mistaken impression" that her incarceration and mistrust of the criminal justice system forced to plead guilty (*Davis*, 145 Ill. 2d at 244), we agree that no meritorious argument may be made that the trial court abused its discretion when denying the defendant leave to withdraw her guilty plea.

¶ 53    OSAD next considered whether the trial court erred when it denied the defendant a reduction in sentence. Counsel notes that the trial court considered all evidence and sentenced the defendant to the statutory minimum prison term.

¶ 54    When determining a sentence, "the trial court has broad discretionary powers." *People v. Stacey*, 193 Ill. 2d 203, 209 (2000). We give substantial deference to the trial court because "the trial judge, having observed the defendant and the proceedings, is in a much better position to consider factors such as the defendant's credibility, demeanor, moral character, mentality, environment, habits, and age." *People v. Snyder*, 2011 IL 111382, ¶ 36. Absent some indication to the contrary, other than the sentence itself, a reviewing court presumes the trial court considered all mitigating evidence presented. *People v. Sauseda*, 2016 IL App (1st) 140134, ¶ 19. Accordingly, a sentence will not be disturbed absent an abuse of discretion. *Stacey*, 193 Ill. 2d at 209-10.

¶ 55    Here, the defendant pled guilty to aggravated battery of a corrections officer, a Class 2 felony with a sentencing range of three to seven years in prison. See 720 ILCS 5/12-3.05(d)(4), (h) (West 2020); 730 ILCS 5/5-4.5-35(a) (West 2020). Because defendant's three-year sentence is the statutory minimum prison sentence, we presume it is proper. See *People v. Knox*, 2014 IL App (1st) 120349, ¶ 46. Moreover, at sentencing, the trial court considered the evidence in aggravation and mitigation, the PSI, and the defendant's criminal background and her statement to the court.

16

See *People v. Babiarz*, 271 Ill. App. 3d 153, 164 (1995) ("Where the sentencing court examines a presentence report, it is presumed that the court considered the defendant's potential for rehabilitation."). The court also explained that incarceration rather than probation was appropriate due to the seriousness of the offense, the need to deter similar conduct, and the defendant's noncompliance with the conditions of release.

¶ 56    We agree with OSAD that because the trial court detailed its reasoning and then imposed the statutory minimum prison term, no meritorious argument may be made on appeal that the trial court erred when it denied the defendant's motion to reduce her sentence.

¶ 57    OSAD also considered whether the certificate filed by postplea counsel complied with the requirements of Illinois Supreme Court Rule 604(d).

¶ 58    Rule 604(d) provides that the defendant's attorney "shall file" a certificate stating that the attorney

> "consulted with the defendant either by phone, mail, electronic means or in person to ascertain defendant's contentions of error in the sentence and the entry of the plea of guilty, has examined the trial court file and both the report of proceedings of the plea of guilty and the report of proceedings in the sentencing hearing, and has made any amendments to the motion necessary for adequate presentation of any defects in those proceedings." Ill. S. Ct. R. 604(d) (eff. July 1, 2017).

¶ 59    This certificate ensures that counsel has reviewed the defendant's claims and considered all relevant bases for the motion to withdraw the guilty plea or reconsider the sentence. *People v. Shirley*, 181 Ill. 2d 359, 361 (1998). Strict compliance with Rule 604(d) is mandatory. *People v. Gorss*, 2022 IL 126464, ¶ 19. The remedy for noncompliance is a remand to the trial court to ensure compliance. *Id.*

17

¶ 60    In the case at bar, plea counsel filed a certificate stating that he consulted with the defendant in person, by mail, by phone, or by electronic means to ascertain her contentions of error in the guilty plea and sentence, examined the court file and the reports of proceedings from the plea and sentencing hearings, and amended the motion as necessary for an adequate presentation of any defects in the proceedings. This certificate, which closely tracks the language of Illinois Supreme Court Rule 604(d), demonstrates strict compliance with the rule. *Id.*

¶ 61    Accordingly, we agree with OSAD that because plea counsel complied with the requirements of Illinois Supreme Court Rule 604(d), no meritorious argument could be raised on appeal regarding the certificate filed in this case.

¶ 62    Counsel next considered whether the trial court erred when conducting the preliminary *Krankel* inquiry.

¶ 63    Pursuant to *Krankel* and its progeny, when a defendant brings a *pro se* posttrial claim that trial counsel was ineffective, the trial court is to inquire into the factual basis of the claims and, under certain circumstances, appoint new counsel to argue them. *People v. Ayres*, 2017 IL 120071, ¶ 11. New counsel is not automatically appointed in every case; rather, the trial court should first examine the factual basis of the defendant's claims. *People v. Moore*, 207 Ill. 2d 68, 77-78 (2003). If the court determines that the claim lacks merit or pertains only to matters of trial strategy, then the court may deny the *pro se* motion. *Id*. at 78. However, if the allegations show possible neglect of the case, new counsel should be appointed. *Id.* Whether the trial court properly conducted a preliminary *Krankel* inquiry presents a legal question that we review *de novo. People v. Roddis*, 2020 IL 124352, ¶ 33. When the court has properly conducted the inquiry and reached a determination on the merits, we will reverse only if the court's determination is manifestly erroneous. *People v. Jackson*, 2020 IL 124112, ¶ 98.

¶ 64    During the preliminary *Krankel* inquiry, the trial court may ask counsel about the facts and circumstance of the defendant's claims and discuss the allegations with the defendant. *People v. Jolly*, 2014 IL 117142, ¶ 30. The trial court may evaluate the defendant's allegations in light of its knowledge of counsel's performance and the insufficiency of the defendant's allegations on their face. *Moore*, 207 Ill. 2d at 79.

¶ 65    Here, the trial court conducted an adequate preliminary inquiry when it asked the defendant to explain her allegations of ineffective assistance. The defendant argued that plea counsel did not give her the evidence against her, was hard to contact, and did not present an alibi defense or challenge evidence related to an allegedly stolen vehicle. She also alleged that plea counsel only briefly discussed the plea with her and told her she did not need to attend the sentencing hearing, although she admitted that those "may not have been his words exactly." The court reminded the defendant that her guilty plea to aggravated battery was before the court and that complaints related to other cases were not, and asked counsel to respond.

¶ 66    Plea counsel noted that supreme court rules limited what evidence he could provide to a defendant, and that he updated the defendant regarding plea negotiations. Once the plea agreement was made, he reviewed the details with the defendant orally and in writing. Plea counsel suggested that the defendant meet with him prior to sentencing to review mitigation evidence, but she did not. The defendant agreed that she received the letter and spoke to plea counsel immediately before making the plea. She made an appointment with plea counsel prior to sentencing, but did not attend it.

¶ 67    The trial court found no factual basis for the defendant's claims, noting that her allegation that plea counsel said she did not have to attend the sentencing hearing was contradicted by a letter that the defendant admitted she received. The court accepted plea counsel's explanation as to why

19

he did not show the defendant certain evidence, and noted that the defendant acknowledged viewing certain footage, which corroborated plea counsel's representation that he discussed the plea with her. Finally, the court did not find it "unusual or neglectful" that a client had to schedule appointments with counsel. The court found no factual basis for the defendant's claims and declined to appoint new counsel.

¶ 68    Here, the trial court and the defendant discussed the defendant's claims of ineffective assistance, and then questioned plea counsel regarding the defendant's claims that plea counsel (1) denied her access to the evidence against her, (2) did not discuss the plea, (3) told her she did not have to attend the sentencing hearing, and (4) was difficult to reach. See *Jolly*, 2014 IL 117142, ¶ 30. Moreover, the defendant admitted that she reviewed the footage of the offense with plea counsel, received the letter detailing the plea agreement, and was able to schedule appointments with plea counsel. Based on the foregoing, we agree with OSAD that no meritorious claim could be made that the court did not conduct an adequate preliminary *Krankel* hearing (*Roddis*, 2020 IL 124352, ¶ 33), or that it manifestly erred when it found the defendant's claims lacked a factual basis and declined to appoint new counsel (*Jackson*, 2020 IL 124112, ¶ 98).

¶ 69    Finally, OSAD considered whether there was a *bona fide* doubt as to the defendant's fitness. Counsel notes that this issue was never raised in the trial court, although the trial court alluded to fitness when denying the defendant postplea relief.

¶ 70    A defendant is presumed fit to stand trial or plead guilty and to be sentenced. 725 ILCS 5/104-10 (West 2020). However, she is considered unfit if, due to a mental or physical condition, she is unable to understand the nature and purpose of the proceedings against her or assist in her defense. *Id.* Fitness refers to the defendant's ability to function within the context of a trial and does not relate to her competence in other areas, such that a defendant may be fit for trial even

20

though her mind might otherwise be unsound. *People v. Brown*, 2020 IL 125203, ¶ 19. The competency standard to enter a guilty plea is the same as the standard to proceed to trial; that is, the defendant must understand the nature of the charge and the purpose of the proceedings, and be able to assist in her defense. *People v. Tapscott*, 386 Ill. App. 3d 1064, 1075 (2008). Whether there is a *bona fide* doubt of the defendant's fitness is generally a matter within the trial court's discretion. *Brown*, 2020 IL 125203, ¶ 19.

¶ 71     Here, the issue of the defendant's fitness was not raised by the parties. The trial court noted, when denying the postplea motion, that it had no concern about fitness when the defendant entered the guilty plea, but a concern arose due to some of her statements and behaviors during later proceedings. The court concluded, however, that the defendant was found fit in a separate case earlier that year and was well-spoken, aware of her rights, and able to understand the proceedings at the plea hearing.

¶ 72     We agree with OSAD that while the defendant's statements to the court covered many irrelevant topics, she acknowledged at the plea hearing and at the motion to withdraw the plea that by pleading guilty other charges were dismissed and that she understood her right to assert her innocence and proceed to trial. At sentencing, the trial court asked the defendant whether she was under any physical or mental disability or taking any substance that would affect her ability to understand the proceedings and she said no. While the defendant was vocal in her distrust of the criminal justice system and its actors, there was no indication in the record that she was unable to understand the nature of the proceedings or assist in her defense. Therefore, there is no meritorious argument that a *bona fide* doubt existed as to her fitness.

¶ 73                                    CONCLUSION

¶ 74     Here, the trial court did not abuse its discretion in denying the defendant's motion to withdraw the plea, or in the alternative, to reduce her sentence, and the certificate filed by plea counsel strictly complied with Illinois Supreme Court Rule 604(d). Additionally, the court conducted an adequate preliminary *Krankel* inquiry, and there was no *bona fide* doubt as to the defendant's fitness. Any argument to the contrary, on any of these points, would lack merit. Therefore, OSAD's motion for leave to withdraw as the defendant's appointed appellate counsel is granted, and the judgment of the circuit court of Effingham County is affirmed.


¶ 75     Motion granted; judgment affirmed.