Docket No. 94895–Agenda 13–September 2003.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. KINGSLEY L. CARTER, Appellee.

Opinion filed November 20, 2003.

JUSTICE FITZGERALD delivered the opinion of the court:

Defendant, Kingsley Carter, was charged with first degree murder and aggravated battery with a firearm. On January 20, 2000, following a jury trial in the circuit court of Peoria County, defendant was convicted of both first degree murder and aggravated battery with a firearm and sentenced to a term of 30 years’ imprisonment for the offense of first degree murder. The appellate court held that the trial court erred in not 
sua sponte
 issuing an involuntary manslaughter instruction to the jury, and reversed and remanded for a new trial. No. 3–00–0512 (unpublished order under Supreme Court Rule 23). We allowed the State’s petition for leave to appeal (177 Ill. 2d R. 315), and we now reverse the appellate court.

BACKGROUND

The following evidence was adduced at trial. Defendant, 53 years old, and the victim, Roy Williams, who was over sixty years old, were next-door neighbors. Defendant believed that between 1995 and 1999 the victim routinely vandalized his property by “keying” his car, throwing garbage into his yard, hitting the side of his house with a sledgehammer, throwing objects onto the roof of his house, and urinating in his basement through a leaky window.

Defendant testified that in December 1999 he purchased a shotgun because he was frightened by the victim’s guests. He testified that strange people gathered at the victim’s house and he became concerned when they hung around the victim’s yard and had “loud discussions.” Therefore, he kept the shotgun loaded and hidden in the closet for his safety.

On April 6, 1999, defendant called the police to report an alleged incident of vandalism. Defendant told the police that the victim had “keyed” his car. The police responded to defendant’s home to investigate his complaint, and defendant informed them that he did not actually see the victim vandalize his property, but that he was certain the victim was responsible. After speaking with the victim and after examining the car and discovering no damage beyond normal wear and tear the police discontinued the investigation.

On April 16, 1999, defendant finished his lunch and walked outside to his front yard. It was then that he allegedly observed several holes in the back window of his car. He drove his car to the police station to report the damage, and on the way to the police station the window allegedly shattered. He completed the incident report at approximately 2 o’clock in the afternoon, and returned home.

On that same evening, the victim and his wife were at their home watching television. At approximately 11:15 p.m. the victim decided to go to the store for a snack. He exited the house through the front door, and walked to his truck parked on the street in the front of the house.

Meanwhile, also at 11:15 p.m., defendant decided to retaliate against the victim by damaging the victim’s truck. Defendant testified that he was angry with the police for failing to promptly respond and investigate his shattered car window and as a consequence he retrieved a 12-gauge pump action shotgun, walked outside into his front yard and fired two shots into the windshield of the victim’s truck located 20 feet in the distance. After the second shot entered the windshield, the door to the truck flew open and he saw the victim get out of the truck and run into the street. Defendant followed the victim into the street and fired a third shot into the air, causing the victim to trip as he ran. Defendant then continued to walk toward the victim who was by then lying on the ground. Defendant fired a fourth shot in front of the victim. As the victim attempted to get up off the ground, defendant fired a fifth shot to the side of the victim. Defendant then returned to his house and placed the shotgun against the wall next to the front door.

The police responded to the 911 call from the victim’s wife. At the scene, the police discovered the victim in his front yard bleeding heavily from his left leg. Police also observed a late model Oldsmobile with a broken back window parked in a nearby driveway, and a truck with gunshot holes to the windshield parked along the curb. The police recovered three spent shotgun shells, each holding approximately 130 pellets, in defendant’s front yard. The police arrested defendant after the victim identified him as the shooter. The police retrieved a shotgun from defendant’s home and a fourth spent shell casing inside the chamber of the shotgun.

The victim died in surgery due to massive hemorrhaging. A forensic pathologist testified that the victim had approximately 59 shotgun pellet holes on the back left leg, a few pellet holes on the right leg, six pellet holes on the mid-back, one pellet hole in the right neck, and one pellet hole in the lower lip, together totaling 77 wounds.

At trial, defendant argued that he lacked the intent or knowledge required to support a murder conviction. Defendant testified that he only meant to damage the victim’s property and that he did not intend to hit or strike the victim with his gunshots. He stated that it was coincidence the victim was inside his truck when he decided to shoot out the truck’s windshield. He told the jury that once he realized the victim was inside the truck after firing the first and second shot, he only meant to frighten the victim when he continued shooting. Defendant testified that he did not aim at the victim and that he was not familiar with the scatter of shotgun pellets. Defendant stated, “I don’t feel [the victim’s] death was–I don’t feel I contributed to his, I mean, I caused his death solely. I just don’t feel that. I feel something else that happened to [the victim] from the time he got in the ambulance until they pronounced him dead at the hospital, it was something else that caused him to die. You don’t normally die from being shot in the leg.” Further, defendant presented expert testimony to explain that he suffered from a delusional disorder that hampered his relationships with others and blurred reality and fiction.

The State argued that defendant possessed the intent and knowledge required to support a murder conviction. The State presented evidence that defendant served five years in the Air Force and two years in the Navy to show that he was familiar with guns and their destructive capabilities. The State urged the jury to disbelieve defendant’s assertion that it was coincidence the victim was inside the truck when he decided to shoot out the truck’s windshield. The State argued that the defendant’s deliberate pulling of the pump handle, reloading of the chamber after firing shots, and continued shooting at the victim as he fled, fell, and continued to flee demonstrated the necessary intent and knowledge required for a murder conviction.

Following arguments, defense counsel tendered an involuntary manslaughter instruction to the trial court, and the trial court held arguments concerning whether the evidence warranted the lesser-offense instruction. Following a recess to consider the issue, the trial court discussed with both parties whether it believed the evidence warranted an involuntary manslaughter instruction. The trial court held that “it would appear” the evidence warranted an instruction. The trial court then questioned whether defendant personally wanted the instruction. However, the trial court called a second recess when defendant informed the court that he and his counsel did not discuss the giving of an involuntary manslaughter instruction, nor did defendant understand the concept of what it meant to give a lesser-offense instruction. The trial court instructed defense counsel to clarify and discuss the issue with defendant.

Following a recess, this exchange occurred:

“THE COURT: Do you have any questions you need to ask me about your right to have that [the involuntary manslaughter instruction] included and your right to have it not included?

THE DEFENDANT: I don’t want it included.

THE COURT: You do not want it included?

THE DEFENDANT: No, I don’t.

THE COURT: You have discussed that with your attorney ***?

THE DEFENDANT: Yes, I have.

THE COURT: [Defense Counsel], anything you wish to state on the record?

COUNSEL: Judge, I have spent a great deal of the week researching this issue and it would be against my advice to–for [defendant] to make this decision, but I have gone over it with him and it is his decision and he may very well be right, it’s just against my advice to do so.”

The trial court did not instruct the jury on involuntary manslaughter, and the jury found defendant guilty of first degree murder and aggravated battery with a firearm.

Defense counsel filed a motion to set aside the verdict or for a new trial. Defense counsel claimed that it was error not to instruct the jury on involuntary manslaughter and that defendant’s mental defect prevented him from making a rational choice regarding the giving of the instruction. Prior to hearing oral arguments on the posttrial motion, the trial court allowed defense counsel to withdraw after defendant complained that he was dissatisfied with counsel’s representation. On June 21, 2000, with new representation, defendant argued his posttrial motion to the court.

Defendant testified that he did not recall discussing the involuntary manslaughter instruction with his attorney, he did not recall discussing the instruction or receiving admonishments from the trial judge, nor did he recall opposing the instruction. Defendant’s trial counsel also testified in support of defendant’s motion. Defendant’s trial counsel testified on direct examination that he discussed the giving of a lesser-offense instruction at least three times with defendant. He testified that he thoroughly explained the meaning of the instruction including that defendant could receive less time if found guilty of the lesser offense. However, he stated that he believed the waiver was not knowing and voluntary. The trial court denied the motion.

Defendant appealed, and the appellate court reversed defendant’s conviction and remanded for a new trial. The appellate court held that the trial court abused its discretion when it failed to give the lesser-offense instruction 
sua sponte
 after determining that the instruction was warranted by the evidence. According to the appellate court, once the trial court determined that the evidence warranted an instruction, the trial court was required to give the instruction. Relying upon this court’s decision in 
People v. Garcia
, 188 Ill. 2d 265, 281 (1999), the appellate court held that “it is the duty of the trial court, independent of defendant’s actions or understanding, to protect ‘society’s interest in avoiding the unjustified exoneration of wrongdoers and in punishing a defendant only to the extent of his crime.’ ” Accordingly, the appellate court held, “Once the trial court exercised its discretion and determined that it was appropriate to give an involuntary manslaughter instruction, it was an abuse of discretion to deny the instruction based upon the mistaken belief that the defendant had a right to stop the court from giving the instruction.” No. 3–00–0152 (unpublished order under Supreme Court Rule 23). We granted the State’s petition for leave to appeal. 177 Ill. 2d R. 315.

ANALYSIS

The State first asserts that the facts of this case did not warrant an involuntary manslaughter instruction. The State points to evidence that defendant fired several shots from a loaded shotgun in the direction of the victim. Further, defendant followed the victim as he fled and continued to shoot at the victim as the victim ran and fell to the ground. Additionally, defendant admitted that he continued to shoot at the victim after the victim was lying on the ground. Therefore, the State argues that no version of the evidence would support a verdict of involuntary manslaughter. Instead, the evidence reveals a deliberate act by defendant, done willfully and with knowledge that his acts created a strong probability of death or great bodily harm, sufficient to constitute the offense of murder and insufficient to establish the offense of involuntary manslaughter.

Defendant contends that this argument is waived because it was not argued before the appellate court and was not included in the State’s petition for leave to appeal. Defendant appealed the conviction, and argued that the evidence supported an involuntary manslaughter instruction. The State did not respond to this argument. The appellate court held that the evidence warranted an involuntary manslaughter instruction, and the State appealed to this court. In its petition for leave to appeal, the State did not challenge the appellate court’s finding that the evidence warranted the giving of an involuntary manslaughter instruction. Despite several opportunities, the State has failed to address this issue. The State first presented this issue in its brief to this court after we granted its petition for leave to appeal.

Supreme Court Rules 341(e)(7) and 315(g) provide that a party must raise arguments and provide citation to legal authority or to the record in the petition for leave to appeal. 177 Ill. 2d R. 315(g); 188 Ill. 2d R. 341(e)(7). Failure to comply with Rules 341(e)(7) and 315(g) results in waiver. See 
City of Chicago Heights v. Living World Outreach Full Gospel Church & Ministries, Inc.
, 196 Ill. 2d 1, 26 (2001); but see 
People v. Donoho
, 204 Ill. 2d 159, 169 (2003). We recognize waiver is a limitation on the parties not on the court. 
Unzicker v. Kraft Food Ingredients Corp.
, 203 Ill. 2d 64, 73 (2002). However, in the instant case, the State repeatedly failed to raise or address this argument. We hold that the issue is waived.

The State next contends that the appellate court’s reversal was improper because reversal was predicated on an alleged error invited by defendant. According to the State, defendant requested that the trial court proceed in the manner he later claimed was in error, and as a consequence defendant is precluded from raising the issue on appeal.

Under the doctrine of invited error, an accused may not request to proceed in one manner and then later contend on appeal that the course of action was in error. 
People v. Villarreal
, 198 Ill. 2d 209, 227 (2001);
 People v. Lowe
, 153 Ill. 2d 195, 199 (1992);
 People v. Segoviano
, 189 Ill. 2d 228, 240-41 (2000). The record clearly illustrates, and neither party disputes, that when asked whether he wished to submit an involuntary manslaughter instruction defendant answered that he did not want the instruction given to the jury. Defendant unequivocally opposed the giving of a lesser-offense instruction, and continued to oppose the instruction even after his attorney disagreed with his decision.

We agree with the State. Action taken at defendant’s request precludes defendant from raising such course of conduct as error on appeal. See 
Villarreal
, 198 Ill. 2d at 227 (“To allow defendant to object, on appeal, to the very verdict forms he 
requested 
at trial, would offend all notions of fair play” (emphasis in original)).

We also reject defendant’s assertion that his decision to oppose the involuntary manslaughter instruction was not knowing or voluntary.
(footnote: 1) Defendant contends that it is clear from the record that he did not understand the decision he was making and believed he was deciding not to plead guilty. Defendant argues his conduct during the proceedings when he made his decision evinces his confusion. Further, defendant directs this court to his trial counsel’s testimony during posttrial arguments as support for his argument that he did not understand the nature and consequences of his decision.

The record belies defendant’s assertion. After defendant displayed some initial confusion, the trial court ordered a recess so that defense counsel could explain and discuss the matter with defendant. Defendant returned from recess certain of his decision. He remained certain of his decision after questioning from the trial court, and after his counsel indicated for the record that it was against his advice. Defense counsel stated, “I don’t know what his exact words were [during the recess], but he made it clear that he did not want any lesser-included instruction. He believed that he didn’t commit murder and wanted the case to be dealt with that way.” Defendant’s trial counsel further informed the court that he “went over all of the alternatives [including the sentencing ranges for involuntary manslaughter], told him what I thought, and then he decided.”

We also disagree that trial counsel’s testimony during posttrial arguments supports that defendant’s testimony was neither knowing nor voluntary. This plainly distorts trial counsel’s testimony. Defendant’s trial counsel testified that the decision 
must have been 
neither knowing or voluntary because it was against his better judgment. Simply stated, because defendant did not follow defense counsel’s advice, defendant must not have understood the decision or its ramifications. Several comments by defendant’s trial counsel during posttrial arguments illustrate this point:

“I believe that if he rejected an involuntary manslaughter instruction, that then he obviously couldn’t understand the decision or ramifications of the decision that he was making.

* * *

I say that [he could not understand the nature and consequences of the decision] because it seems to me that if anybody could understand the nature and consequences of that decision, they wouldn’t have made that decision. But you know, I didn’t state it as a psychologist, I stated it as an attorney.

* * *

Well, if he didn’t understand them [the ramifications of his decision], or either he didn’t understand them or he chose to ignore them, but either way, he made a decision that I disagreed with.”

Notably, defendant’s trial counsel also agreed that one advantage to defendant’s position was that the jury “could find him not guilty and he could walk out the door a free man.”

In 
People v. Brocksmith
, 162 Ill. 2d 224, 229 (1994), we held that defendant, rather than his counsel, has the right to make the decision whether to tender an instruction on a lesser-included offense. Our holding in 
Brocksmith
 rests upon the principle that a defendant should ultimately have the ability to make the decision because it concerns “the potential loss of liberty on an initially uncharged offense.” 
Brocksmith
, 162 Ill. 2d at 229. The mere existence of a decision against counsel’s advice does not establish that defendant could not understand the consequences of his decision. Rather, in this case, the record simply demonstrates that defendant exercised his right to oppose the tendering of the lesser-offense instruction, a decision which protected him against the possibility of a compromise verdict by the jury. Therefore, the record does not demonstrate that defendant’s decision to oppose the giving of a lesser-offense instruction was not knowing or voluntary.

Despite our finding that defendant cannot request the court proceed in one manner and then contend the action was in error, we are compelled to comment further to provide guidance to our trial courts. We observe that waiver is a limitation on the parties and not on the court (
People v. Kliner
, 185 Ill. 2d 81, 127 (1998)), and a reviewing court may ignore waiver “to ensure the maintenance of a sound and uniform body of precedent” (
Lowe
, 153 Ill. 2d at 199). Therefore, we look beyond waiver to address the issue in this case: whether the appellate court misinterpreted when a lesser-offense instruction is mandatory and erred in finding that the trial court had a duty to give the involuntary manslaughter instruction 
sua sponte
.

In this case, neither defendant nor the State requested the giving of a lesser-offense instruction. Rather, defendant objected, and ultimately the trial court did not tender the instruction to the jury. Under these circumstances, we are guided by our decision in 
People v. Taylor
, 36 Ill. 2d 483 (1967), where we clearly rejected the notion that a trial court has a duty to give the instruction 
sua sponte
. Like defendant in the instant matter, in 
Taylor
 neither the defendant nor his attorney requested the lesser-offense manslaughter instruction, the State did not request a lesser-offense instruction, and the trial court did not tender the instruction to the jury. 
Taylor
, 36 Ill. 2d at 491. The defendant complained on appeal that the trial court erred in failing to give the manslaughter instruction 
sua sponte
. We held that the decision is discretionary.

“The decisions of the court indicate no more than an application of the familiar procedural rule that error cannot be assigned in a reviewing court with respect to a matter upon which the trial court was not called upon to rule. So it has been said, ‘The general statement contained in the cases, that a manslaughter instruction should be given where there is evidence justifying it, must be understood in the sense the duty exists when such instruction is offered by either side, when the circumstances justify it, but does not apply to cases where no instructions for manslaughter are offered in the case. The failure to give an instruction for manslaughter where none was tendered is not error.’ [Citation.]

The result is that when the evidence in a murder case would support a verdict of manslaughter, and the defendant does not request a manslaughter instruction, the giving of such an instruction is committed to the discretion of the trial judge.” 
Taylor
, 36 Ill. 2d at 489.

Importantly, in 
Taylor
 we also rejected the assertion that whenever the evidence warrants a lesser-offense instruction, the instruction 
must
 be tendered.

“Many decisions of this court have stated that ‘*** if there is any evidence in the record which, if believed by the jury, would reduce a charge of murder to manslaughter, an instruction defining that crime should be given. [Citations.] Under these authorities it is immaterial that the defendant did not request a manslaughter instruction, or objected to it.

On the other hand it has been held that the failure to give a manslaughter instruction cannot be asserted as a ground for reversal in a reviewing court unless such an instruction has been requested. [Citations.] *** ‘No such instructions having been asked by plaintiff in error, the court had a right to assume that plaintiff in error preferred to submit the case to the jury in such way that the jury would be compelled to find the defendants guilty of murder or not guilty. It was the right of plaintiff in error to submit that question to the jury and require the jury to pass on the question of his guilt or innocence of the crime of murder, and it was not the duty of the court to submit issues and questions to the jury which the parties, by their action, said they did not desire passed upon.’ ***.

* * *

When the evidence will support either charge and the prosecution does not tender an instruction on the lesser offense, the defendant has a choice, subject to the judge’s authority to instruct 
sua sponte
, of submitting one or both instructions. Different views have been expressed as to the consequences of submitting both instructions. It has been said that ‘merciful, or weak jurors may disregard even overwhelming proof of culpability and acquit entirely or convict of a lower crime than the evidence reflects.’ [Citation.] It has also been said that to give both instructions ‘is apt to induce a doubtful jury to find the defendant guilty of the less serious offense rather than to continue the debate as to his innocence.’ [Citation.]

It may be that more accurate results would be obtained if the trial judge was required to instruct as to both the greater and the lesser offenses whenever the evidence would sustain either verdict, and in some jurisdictions such a requirement has been imposed by statute or by decision. [Citation.] 
But we are not sufficiently persuaded that we are willing to eliminate by judicial decision an established procedure that has long been considered to operate for the benefit of those accused of crime
.” (Emphasis added.) 
Taylor
, 36 Ill. 2d at 488, 490-91.

We will not depart from this well-established procedure. See 
People v. Garcia
, 188 Ill. 2d 265, 270 (1999); 
People v. Barnard
, 104 Ill. 2d 218, 232 (1984); see also 
People v. Sinnott
, 226 Ill. App. 3d 923, 932 (1992). When the evidence will support either charge, a trial court may exercise discretion and consider several factors in arriving at the decision to tender or not tender the lesser-offense instruction. It is appropriate for the trial court to give weight to the views of the prosecution, the defense, and also society’s interest in avoiding unjustified exoneration of wrongdoers and in punishing an accused only to the extent of the crime. However, no one consideration predominates over another. Rather, this well-established procedure is a balancing exercise and where facts exist like those before us today the decision has long been committed to the discretion of the court.

The appellate court erred in finding that the trial court had a 
duty
 to give the involuntary manslaughter instruction 
sua sponte
. Furthermore, there is no evidence to suggest the trial court abused its discretion when it declined to tender the instruction. The trial court considered the appropriate factors and chose not to tender the lesser-offense instruction in light of the defendant’s opposition to the instruction. The exercise of restraint in giving the instruction does not signal an abuse of the court’s discretion.

CONCLUSION

For the aforementioned reasons, the judgment of the appellate court is reversed and the judgment of the circuit court is affirmed.

 Appellate court judgment reversed;

circuit court judgment affirmed.

FOOTNOTES
1:     
1
The parties do not raise and we make no comment regarding what action, if any, the trial court must take to ensure that a defendant’s decision to tender or withhold a lesser-offense instruction is knowing or voluntary.