NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 240449-U

NO. 4-24-0449

IN THE APPELLATE COURT

FILED
December 13, 2024
Carla Bender
4th District Appellate
Court, IL

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|     Plaintiff-Appellee, | ) | Circuit Court of |
|     v. | ) | Peoria County |
| ALFONZO D. HILL, | ) | No. 23CF939 |
|     Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Paul P. Gilfillan, |
| | ) | Judge Presiding. |

JUSTICE ZENOFF delivered the judgment of the court.
Justices Steigmann and Doherty concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court affirmed defendant's conviction of violation of an order of
protection, holding (1) the appellate court would not review the admission of
evidence taken from two phones for plain error when defendant expressly
withdrew his motions to suppress and waived a hearing on the issue, (2) the trial
court had jurisdiction over defendant, (3) the State proved defendant guilty
beyond a reasonable doubt, and (4) the court properly denied defendant's request
for an order to compel the return of his impounded vehicle and a waiver of
storage fees.

¶ 2        In January 2024, a jury convicted defendant, Alfonzo D. Hill, of violation of an

order or protection. (720 ILCS 5/12-3.4(a)(1) (West 2022)). Before trial, defendant expressly

withdrew motions to suppress evidence found on two phones because he did not want a

continuance for the trial court to hear the motions. During trial, defendant contended he was not

served with the order of protection and did not have knowledge of it. After trial, he asked the court

to order the return of his impounded vehicle and waive storage fees. The court denied the request

and told defendant to follow the procedures set forth by local ordinances and the police department to request return of his vehicle.

¶ 3        On appeal, appearing *pro se*, defendant contends (1) the trial court erred in failing to suppress evidence obtained from his phones, (2) the court lacked jurisdiction because he was not served with the order of protection and lacked actual knowledge of it, (3) the State failed to prove him guilty beyond a reasonable doubt, and (4) the court erred by failing to order the return of his impounded vehicle and a waiver of storage fees. We affirm.

¶ 4                                    I. BACKGROUND

¶ 5        On November 22, 2023, the State charged defendant with one count of aggravated stalking (*id.* § 12-7.4(a)(3)). On December 19, 2023, the State indicted defendant on one count each of aggravated stalking (*id.*), stalking (*id.* § 12-7.3(a)(2)), and violation of an order of protection (*id.* § 12-3.4(a)(1)). The stalking charges alleged defendant, between November 9 and November 21, 2023, engaged in a course of conduct directed at the victim, M.H., and knew or should have known the course of conduct would cause a reasonable person emotional distress. The aggravating stalking charge alleged defendant did so while violating an order of protection. Regarding the violation of the order of protection, the State alleged defendant, on or about November 21, 2023, knowingly committed an act prohibited by an order of protection by sending M.H. an e-mail.

¶ 6        On December 4, 2023, while represented by the public defender, defendant filed three *pro se* motions seeking to suppress evidence found on two phones seized by police officers. In the motions, defendant primarily alleged (1) his arrest was illegal because it was performed without a warrant or probable cause, (2) police officers illegally obtained the two phones incident to his arrest, and (3) the phones were outside the scope of a search incident to arrest.

¶ 7       On December 13, 2023, defendant filed a *pro se* motion seeking the return of his vehicle, which had been towed following his arrest, and a waiver of storage fees. Defendant also filed another *pro se* motion, again seeking suppression of evidence from the phones.

¶ 8       At defendant's December 20, 2023, arraignment, defendant indicated a desire to proceed *pro se*. Between December 20, 2023, and January 10, 2024, defendant filed additional *pro se* documents, including a motion to dismiss because the order of protection at issue was dismissed on December 11, 2023, after M.H. failed to appear.

¶ 9       On January 10, 2024, the trial court conducted a pretrial hearing. Defendant's counsel noted defendant had filed approximately 100 pages of *pro se* motions. Counsel stated defendant wanted to present all of them to the court, but counsel would not be adopting most of them. Defendant stated he wished to proceed *pro se*. Referring to speedy-trial terms, defendant also stated he was ready for trial and objected to any continuance.

¶ 10      The trial court asked the State if it was ready for trial on January 22, 2023. The State replied:

> "I would object to pushing this to trial and expecting the State to respond to all of this nonsense he's written. Over 103 pages I have here of motions. And he thinks he can have it all and his trial on the 22nd.
>
> If he wants his trial on the 22nd, he waives all of these motions."

¶ 11      The trial court noted a continuance was necessary for the State to produce discovery and to address defendant's motions. Defendant objected, stating he was ready for trial. The following colloquy then occurred:

"THE COURT: I heard you. I'm finding that this continuance of the trial setting is at your request because of all these last minute maneuvers on your part which by definition requires a continuance of the trial. So—

THE DEFENDANT: Your Honor, may I say something else? If I have to not adopt these motions or put these motions—I will not do that because I'm ready to go to trial. I don't want to sit here for years and years just because the State—the State doesn't even have evidence to go to trial, [Y]our Honor. You got to look at the discovery. I'm asking you to look at the discovery, sir.

THE COURT: I don't make that determination. The jury does.

THE DEFENDANT: That's fine. I won't adopt the motions then. I'm ready for trial.

THE COURT: If you go *pro se* and we allow that today, you'll waive hearing on any motion you filed so far?

THE DEFENDANT: So far. Yes."

¶ 12　　　　Following an inquiry and admonishments, the trial court allowed defendant to proceed *pro se*. At the end of the hearing, the court confirmed with defendant that, "All prior motion[s] of yours have been withdrawn?" Defendant replied, "For right now, yes."

¶ 13　　　　On January 17, 2024, defendant filed a motion to dismiss, alleging the stalking counts were unconstitutionally vague and the order of protection underlying the charges was void. Also on January 17, 2024, the trial court held a hearing.

¶ 14　　　　At the beginning of the hearing, the trial court stated:

"We were in court last Wednesday when against admonitions defendant requested and was allowed to go *pro se*. And he had a number of other requests.

- 4 -

But to recap he had filed, while represented by an attorney, a number of documents. And he also wanted to have his trial begin on January 22nd.

I would have set aside time to have a hearing on any documents or motions that he had, but it would necessitate a continuance of the trial. [Defendant] did not want a continuance of the trial and agreed to waive or withdraw all previously—prior to January 10th, motions or documents so as to keep his trial in place. And that was fine with me."

¶ 15 Defendant stated that he wanted discovery of the search warrants that allowed the police to search his phone and show probable cause for his arrest. The trial court stated:

"Okay. All right. So—well, see what you are doing now is getting in the realm of pretrial motions. I hear you want to say it was an illegal search of some type, so therefore you need documents. Therefore you need a hearing. To do that we are going to have to continue the trial."

Defendant stated he did not want to continue the trial and further stated, "I'm ready to go to trial. I object to any continuance."

¶ 16 During the hearing, defendant also presented the trial court with a motion to dismiss the indictment for lack of jurisdiction because the conduct was not committed in Peoria County. The State argued the alleged course of conduct included events that occurred in Peoria County, such as multiple e-mails sent to M.H. from defendant, as well as defendant following M.H. in her vehicle. The court denied the motion. On the day of trial, defendant again filed a motion to dismiss the indictment for lack of jurisdiction, adding an allegation the indictment should be dismissed because the order of protection was vacated. Defendant also filed a motion seeking the return of his vehicle and a waiver of storage fees.

¶ 17    On January 23, 2024, defendant's jury trial began. During discussions about jury selection, defendant told the trial court he objected to the State presenting evidence from his phones at trial. The court stated a motion to suppress evidence should have been made before trial but asked the State for more information about defendant's phones. The State said two phones were taken from defendant's property at the jail under a warrant and they were searched under a different warrant. The following colloquy then occurred:

"THE DEFENDANT: Yeah, the search warrants—I was illegally arrested, once again, and I put this in the motion that I had to take off the record. I thought that we could argue the motion outside the—the—I thought we could go to trial but argue it outside the presence of the jury.

THE COURT: Remember, we would have given you plenty of time to have hearings on your motions, but you agreed to withdraw those so you could get your speedy trial, and so we're in the speedy trial."

¶ 18    Tyler Stufflebeam, a Canton police officer, testified that, on November 10, 2023, he went to an apartment in Canton, Illinois, because the resident of the apartment had received information her apartment was possibly being damaged or flooded. No one was at the apartment when he arrived. Stufflebeam observed damage to the apartment, including a broken window, and saw the kitchen sink was overflowing. He also saw blood in the area of the porch and on a door handle. Stufflebeam later observed defendant at the police station and saw defendant with a bandage or paper towel covering a cut on one of his hands. Droplets of blood were found between the police station doors and defendant's car. From defendant's cross-examination of Stufflebeam, it was established M.H. was a resident of the apartment and Stufflebeam had also been dispatched to the apartment on November 9, 2023, in response to a report of "a possible

domestic." At that time, defendant said a man had been there and pointed a gun at him, while M.H. reported defendant had struck her car, breaking the back window.

¶ 19     Timothy Herink, an officer with the Canton Police Department, testified he also went to the apartment on November 10, 2023, because M.H. reported it was "trashed." M.H. provided a written statement reporting that the previous night, defendant entered her home and refused to leave. She reported that when she tried to shove defendant out the door, he threatened and hit her, at which point she called the police. M.H. reported defendant left in his vehicle before coming back and damaging her car. M.H. left to stay at her mother's home. She reported defendant later sent her messages stating someone should check her home. Herink testified he asked to see M.H.'s cell phone multiple times to see her messages, but M.H. refused.

¶ 20     Matthew Rogers, an officer with the Peoria Police Department, testified that, on November 21, 2023, he met with M.H. at approximately 1:35 p.m. at a residence in Peoria concerning the violation of an order of protection. M.H. told Rogers she was receiving e-mails from a former boyfriend, and she forwarded screenshots of the e-mails to Rogers.

¶ 21     Megan Houghton, another officer with the Peoria Police Department, testified that on November 21, 2023, at approximately 3:20 p.m., she responded to a dispatch that M.H. was being followed by a man she had an order of protection against. Body-camera footage of Houghton's interaction with M.H. was admitted and played for the jury. When Houghton arrived, M.H. went into a liquor store and, after M.H. exited and began driving away, M.H. started honking her horn and yelled out the window that "he" had just driven past.

¶ 22     Houghton followed the suspect's vehicle, pulled it over, and identified defendant as the driver. During the incident, another man showed up, who defendant reported was the man who had previously pointed a gun at him.

- 7 -

¶ 23     Defendant was taken into custody, and Houghton told him if he was sending e-mails to M.H., stop doing so. Defendant denied he sent any e-mails to M.H. However, Houghton testified M.H. was continuously getting e-mails from defendant during the incident. She testified one e-mail said, "almost got caught." Another read, "were [*sic*] y'all gun A? I got mine." A third read, "you got that N-word in the car, Curtis. Let the hunt begin." Another said, "you lucky you was on Main." Houghton testified Main Street was where she made contact with M.H. Houghton said she knew from another officer's report that defendant's cell phone was seized at the jail.

¶ 24     Jacob Bradford, another officer with the Peoria Police Department, testified that about 20 minutes before the dispatch concerning M.H., he saw a vehicle with a driver who was wearing a ski mask that covered everything except the driver's eyes. The vehicle's registration identified defendant as the owner. Bradford then heard a dispatch involving defendant and met with Houghton while she interviewed M.H. Both Bradford and Houghton followed and stopped defendant's vehicle, and defendant was arrested for a violation of an order of protection.

¶ 25     John Peterson, an officer with the Peoria Police Department, processed defendant's vehicle. Peterson found a copy of an emergency order of protection in the trunk of the vehicle naming M.H. as the petitioner and defendant as the respondent. The order stated it was issued the morning of November 20, 2023, and it prohibited defendant from having any communication with M.H. The State also presented a certified copy of the emergency order of protection. The order of protection ended on December 11, 2023.

¶ 26     Following Peterson's testimony, defendant stated, "I'm going to ask that we go to a motion hearing because a lot of the things that's alleged in that phone, it shouldn't be allowed. The jury shouldn't be allowed because it's very prejudice, and it's against my violation, my rights." The trial court stated:

"The motion to suppress time has come and gone. When you went *pro se* you were advised that there might be disadvantages in not having an attorney. And when I gave you the opportunity to have all of your hearings and motions set and reviewed, you declined that opportunity, and you insisted on a trial, and I granted your request."

¶ 27 Christina Chavez, a detective with the Peoria Police Department, testified about the material downloaded from two phones seized from defendant. The download from the phones showed that, between September 4, 2023, and November 21, 2023, there were no phone calls from M.H. to defendant, but there were 11 calls from defendant to M.H. None of the calls were answered. One of the calls occurred on November 21, 2023. On four of the calls, defendant had taken measures to hide his number from M.H. when he called.

¶ 28 The download also showed e-mail messages sent to M.H. On November 20, 2023, after the issuance of the order of protection, numerous messages were sent to M.H. in which the writer discussed M.H.'s children, a case involving the Illinois Department of Children and Family Services, and a person named Curtis. In one message the writer said, "wat yoir lil paper go do i was never coming to look for u." Numerous messages were also sent on November 21, 2023. In messages sent around 3:30 p.m. or shortly thereafter, the writer stated, "Where y'all gun at? I got mine," and "Let the hunt begin." Another said, "You lucky you was on Main." Chavez reviewed video surveillance footage and testified that, on November 21, 2023, defendant's vehicle was traveling on Main Street at times consistent with the testimony of the other officers.

¶ 29 Also found on the phone were Internet searches for M.H. and her apartment address. Searches on November 9 and 10, 2023, included, "How much is water damage if

someone flood the apartment." Chavez testified all of the information on the phone showed defendant as the owner.

¶ 30    Defendant did not testify but offered various items into evidence. Among those was defendant's exhibit D, which contained numerous items, including videos containing body-camera footage of the search of defendant's vehicle. After a discussion of items in the exhibit unrelated to body-camera footage, and which the trial court had previously held were not admissible, the court stated the exhibit was put in evidence. However, the court also stated its previous ruling regarding the items unrelated to the body-camera footage remained the same. The court later told defendant he could show the jury items in evidence during closing argument. The record does not show defendant specifically sought to use the body-camera footage from exhibit D during trial or in his closing argument. A review of those videos shows officers searching defendant's vehicle, pulling papers out of the truck, and indicating they found the order of protection in the trunk. There was a discussion that the presence of the order in the car showed defendant had been served with it.

¶ 31    The jury found defendant not guilty of stalking and aggravated stalking but guilty of violation of an order of protection. Defendant filed numerous posttrial documents, including motions seeking the return of his phone and letters with various complaints. On February 7, 2024, defendant filed a letter in which he asked, "Why would I put a motion in for a new trial when you guys tortured me destroyed my mental health, treated me like a animal, like a slave if I put a motion for a new trial in you guys are going to do the same thing or worse." Defendant then stated his belief he was denied a fair trial. Defendant also wrote:

        "This is another reason I do not want to put in a motion for a new trial[.] I would rather use the plain error doctrine and be safe in the appellate court then go

through this torture again[.] I understand if I don't put a[n] oral or written motion in for a new trial then I waive my right on appeal, but there is an exception to this waiver rule[. T]here was so much injustice in my case I can ask the reviewing court to review the errors under the plain error doctrine[.] I have been wrongfully convicted."

¶ 32 On March 1, 2024, defendant filed a motion seeking the return of his impounded vehicle and a waiver of storage fees. Generally, he contended the vehicle was illegally towed and impounded and he was not given proper notice before his vehicle was deemed abandoned. On March 6, 2024, the trial court conducted a hearing at which it intended to address any posttrial motions. The court noted that defendant filed 20 separate documents totaling 253 pages. Defendant told the court, "Those are letters for my appeal. Those are not post-trial motions." Regardless, the court addressed several matters that defendant has not raised on appeal.

¶ 33 Also at the hearing, the trial court addressed defendant's vehicle. The State said defendant was in discussions with the City of Peoria to get his car back and he could get it back, but he needed to go through the proper procedure with the city to seek a reduction or waiver of tow fees. Without explanation, other than stating, "It's the case law," defendant suggested the impoundment of his vehicle was unconstitutional. The court found it did not have jurisdiction over the vehicle and told defendant, "You've sent me documents where they told you how to get it back by Peoria ordinance, so follow those rules and regulations in order to get your car back." Defendant later filed additional documents he wanted included in the record on appeal. Among those was a notice explaining the procedure followed by the Peoria Police Department for seeking return of the vehicle and a waiver of storage fees.

¶ 34    The trial court declined to enter an order prohibiting the city from selling or destroying defendant's vehicle. The court entered a written order stating it did not have jurisdiction to order the return of defendant's vehicle and otherwise denying defendant's posttrial motions.

¶ 35    The trial court sentenced defendant to 24 months of probation.

¶ 36    This appeal followed.

¶ 37                                II. ANALYSIS

¶ 38    On appeal, defendant contends (1) the trial court erred in failing to suppress evidence obtained from his phones, (2) the court lacked jurisdiction because he was not served with the order of protection and lacked actual knowledge of it, (3) the State failed to prove him guilty beyond a reasonable doubt, and (4) the court erred by failing to order the return of his impounded vehicle and a waiver of storage fees.

¶ 39                           A. Motion to Suppress Phones

¶ 40    Defendant first contends the trial court erred in failing to suppress evidence from his phones. Defendant acknowledges he failed to preserve the issue in a motion for a new trial but asks this court to address the matter under the plain-error doctrine. The State argues defendant expressly waived the issue, precluding plain-error review.

¶ 41    A defendant's failure to object at trial and to raise the issue in a posttrial motion operates as a forfeiture of the right to raise the issue as a ground for reversal on review. *People v. Harvey*, 211 Ill. 2d 368, 385 (2004). The plain-error rule provides a narrow and limited exception to forfeiture and is applied as a means of ameliorating the harshness of a strict application of forfeiture. *Id.*

¶ 42          "Where a defendant acquiesces to the actions taken by the trial court, he waives his right to challenge those actions on appeal." *People v. Scott*, 2015 IL App (4th) 130222, ¶ 24. Waiver is a tactical decision not to object to otherwise objectionable matters. *Id.* While forfeiture occurs accidentally or negligently, waiver is an intentional decision to abandon a known legal argument. *Id.* For example, waiver occurs when a defendant expressly declines to make an objection. *Id.* The distinction between waiver and forfeiture is important because, when a defendant has waived an issue, we need not review the issue on appeal for plain error. *Id.* ¶ 21.

¶ 43          Further, plain-error review is forfeited when the defendant invites the alleged error. "[A] defendant's invitation or agreement to the procedure later challenged on appeal 'goes beyond mere waiver.' " *Harvey*, 211 Ill. 2d at 385. (quoting *People v. Villarreal*, 198 Ill. 2d 209, 227 (2001)). "Indeed, Illinois courts sometimes refer to the issue as one of estoppel." *Id.* "That is, '[u]nder the doctrine of invited error, an accused may not request to proceed in one manner and then later contend on appeal that the course of action was in error.' " *Id.* (quoting *People v. Carter*, 208 Ill. 2d 309, 319 (2003)). To allow a defendant to use the exact ruling or action procured in the trial court as a vehicle for reversal on appeal would offend all notions of fair play and encourage defendants to become duplicitous. *Id.* Thus, in numerous cases, Illinois courts have applied the invited-error doctrine to bar a defendant from claiming error in the admission of improper evidence where the admission was procured or invited by the defendant. See *id.* at 386 (citing cases).

¶ 44          A motion to suppress evidence alleged to have been illegally seized must be made before trial, "unless opportunity therefor did not exist or the defendant was not aware of the grounds for the motion." 725 ILCS 5/114-12(c) (West 2022). Here, defendant initially brought motions to suppress before trial but then expressly withdrew them and expressly waived any hearing on them because he did not want a continuance of the trial. He was not later entitled to

have a hearing on those motions during trial. Because defendant expressly waived the issue, we need not, and do not, engage in a plain-error review of it.

¶ 45    Defendant argues he needed time to review discovery in order to argue his motions to suppress and the trial court wrongly forced him to choose between waiving his right to a speedy trial and waiving his ability to move to suppress the evidence. But, the court offered defendant a continuance, which would allow him to prepare for and argue his motions. The court also did not ask defendant to waive his overall right to a speedy trial. The court merely told defendant that trial would be continued with the delay attributed to him in order to hear the motions. Defendant then expressly withdrew the motions to proceed to trial quicker. As previously noted, in doing so, he waived the issue. Further, he also invited any error. Thus, defendant has forfeited the ability to claim error in the admission of evidence from the phones on appeal.

¶ 46    B. Order of Protection, Sufficiency of the Evidence

¶ 47    Defendant next contends the trial court lacked jurisdiction because he was not served with the order of protection until after his arrest. In the alternative, defendant contends the State failed to present sufficient evidence he had knowledge of the order of protection to prove him guilty beyond a reasonable doubt.

¶ 48    1. *Service of the Order of Protection*

¶ 49    Relying on primarily civil cases pertaining to service of summons, defendant contends a lack of service of the order of protection deprived the trial court of jurisdiction over the criminal case. He also suggests the order was not effective until he was served with it or it was void because of improper service.

¶ 50    Emergency orders of protection may be entered *ex parte*. *Koshinski v. Trame*, 2017 IL App (5th) 150398, ¶ 13; 750 ILCS 60/217(a)(3)(i) (West 2022). Emergency orders, unless

- 14 -

reopened or extended, are "effective for not less than 14 nor more than 21 days." *Id.* § 220(a)(1). For emergency and interim orders of protection, the respondent may petition the court to reopen the order upon two days' notice to the petitioner. *Id.* § 224(d), 221(b)(6).

¶ 51　　　Here, the emergency order of protection was issued on November 20, 2023, and thus was in effect at the time of defendant's arrest. Meanwhile, this case did not involve a direct challenge to the validity of the order of protection. Instead, it was a separate criminal proceeding charging defendant with a violation of the order. The trial court acquires subject-matter jurisdiction over a criminal proceeding upon the proper filing of a complaint, information, or indictment sufficiently alleging that a crime was committed within the county. *People v. Billings*, 52 Ill. App. 3d 414, 425 (1977). The trial court acquires personal jurisdiction over a criminal defendant when the defendant personally appears before the court and enters a plea. See *People v. Woodall*, 333 Ill. App. 3d 1146, 1156 (2002).

¶ 52　　　The trial court here had jurisdiction. Any lack of formal service of the emergency order of protection was not a jurisdictional factor affecting the court in a separate criminal case for a violation of the order. Instead, while defendant characterized the issue as one of jurisdiction, his argument is actually contesting the evidence that he knowingly violated the order. He contends that because the State did not show he was served with the order or that he had knowledge of it before his arrest, his arrest and/or conviction for knowingly violating the order was invalid. Thus, his argument is actually an attack on the sufficiency of the evidence. See *People v. Hinton*, 402 Ill. App. 3d 181, 183 (2010).

¶ 53　　　　　　　　　　2. *Sufficiency of the Evidence*

¶ 54　　　Regarding the sufficiency of the evidence, defendant argues the State failed to prove he was served with the order of protection or had knowledge of it.

¶ 55    When the sufficiency of the evidence is challenged on appeal, we must determine " 'whether, after viewing the evidence in the light most favorable to the [State], any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis omitted.) *People v. Graham*, 392 Ill. App. 3d 1001, 1008 (2009) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). We "will not set aside a criminal conviction on grounds of insufficient evidence unless the proof is so improbable or unsatisfactory that there exists a reasonable doubt of the defendant's guilt." *People v. Maggette*, 195 Ill. 2d 336, 353 (2001).

¶ 56    A person commits the offense of violating an order of protection when he or she commits an act prohibited by a valid order of protection and has been served notice of the contents of the order "or otherwise has acquired actual knowledge of the contents of the order." 720 ILCS 5/12-3.4(a)(2) (West 2022). Actual knowledge can be shown by service, notice, or "[b]y other means demonstrating actual knowledge of the contents of the order." 750 ILCS 60/223(d)(4) (West 2022). Because knowledge is not ordinarily susceptible to direct proof, it is generally established through circumstantial evidence. *Hinton*, 402 Ill. App. 3d at 185. " 'Circumstantial evidence is proof of facts or circumstances that give rise to reasonable inferences of other facts that tend to establish guilt or innocence of the defendant.' " *Id.* (quoting *People v. Saxon*, 374 Ill. App. 3d 409, 417, (2007)).

¶ 57    Here, the State presented evidence a copy of the emergency order of protection was in defendant's vehicle at the time of his arrest. There was also evidence defendant sent M.H. an e-mail on the day the order was entered stating, "wat yoir lil paper go do i was never coming to look for u." That statement provided an inference defendant had seen the order. Defendant argues he was not aware of the order, he was set up, the police planted evidence, and various witnesses for the State lied. However, he presented no significant evidence at trial supporting those arguments.

¶ 58 Defendant also refers to evidence from his exhibit D, which he contends shows officers "planting" the order of protection in his vehicle. He states, had the jury seen it, he would not have been found guilty. However, the record indicates defendant did not seek to show those specific videos to the jury. Further, a review of those videos shows officers searching defendant's vehicle, pulling papers out of the trunk, and indicating they found the order of protection in the trunk. There was discussion that the presence of the order in the car showed defendant had been served with it. The videos do not show officers "planting" evidence in the vehicle.

¶ 59 It was reasonable for the jury to conclude from defendant's e-mail and the presence of the order of protection in his vehicle that he had actual knowledge of it. Meanwhile, the evidence was overwhelming defendant sent M.H. e-mails in violation of the order. Accordingly, the evidence was sufficient to convict him beyond a reasonable doubt.

¶ 60 C. Return of Defendant's Vehicle

¶ 61 Finally, defendant argues the trial court erred in failing to order the return of his vehicle and a waiver of storage fees.

¶ 62 "Where administrative remedies are available, they must be exhausted before judicial review in the circuit court can commence." *Koontz v. Pepsico, Inc.*, 153 Ill. App. 3d 152, 153 (1987). Exceptions to this rule have been delineated (1) when an ordinance or statute is attacked as unconstitutional; (2) where multiple remedies exist and at least one has been exhausted; and (3) where irreparable harm will result from further pursuit of administrative remedies. *Id.* For example, an exception has been applied when it would be patently useless to seek relief before local bodies. See *Northwestern University v. City of Evanston*, 74 Ill. 2d 80, 88 (1978).

¶ 63 The Peoria Code of Ordinances provides a person whose vehicle was towed the right to appear before a person designated by the department as head of the department ordering

the tow and present his or her reasons for believing such tow was incorrectly ordered. Peoria Code of Ordinances § 30-347 (1957). After hearing the owner's reasons for believing the tow was improper and doing such other investigation as may be appropriate, if the designated person determines the tow was improper, the vehicle shall be immediately released and the city shall pay the cost of towing and storage to the date of the release. *Id.* § 30-349. If the tow is found to have been proper, the vehicle shall continue to be held subject to appropriate conditions. *Id.*

¶ 64        Here, defendant had not completed the administrative process required to seek the return of his vehicle and a waiver of fees. Defendant also did not present evidence to the trial court that any exceptions to the requirement that he exhaust his administrative remedies were applicable. While defendant suggested the impoundment was unconstitutional, he failed to provide any cogent argument that was the case. On appeal, defendant largely suggests the impoundment was improper because he was illegally arrested, there was police misconduct in his case, and he did not receive proper notice of the impoundment. Those are arguments defendant may present in the process provided by the Peoria Code of Ordinances and Peoria Police Department procedures. Because defendant has not shown he has exhausted that local administrative remedy, he could not challenge it in the trial court.

¶ 65                                    III. CONCLUSION

¶ 66        For the reasons stated, we affirm the trial court's judgment.

¶ 67        Affirmed.