**NOTICE:** This order was filed under Illinois Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (3d) 230193-U

Order filed February 25, 2025

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2025

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 18th Judicial Circuit, Du Page County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-23-0193 Circuit No. 13-CF-1183 |
| RENE ROJO, | ) ) ) | Honorable Margaret O'Connell, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE HOLDRIDGE delivered the judgment of the court.
Justices Anderson and Bertani concurred in the judgment.

_____

**ORDER**

¶ 1      *Held*:   The court properly dismissed the defendant's second-stage postconviction petition.

¶ 2      The defendant, Rene Rojo, appeals from the second-stage dismissal of his postconviction petition, arguing it made a substantial showing of a constitutional claim, requiring a third-stage evidentiary hearing. Specifically, the defendant contends that the State's failure to disclose a witness's rejected offer of leniency to testify against the defendant prejudiced him.

¶ 3                            I. BACKGROUND

¶ 4        The State charged the defendant by indictment with two counts of criminal drug conspiracy (720 ILCS 570/405.1(a), 401(a)(1)(C), (D) (West 2010)). On August 16, 2016, the matter proceeded to a bench trial. The evidence adduced at trial showed that Roque Chavarria began working with the defendant for drug-related purposes in late 2009. A year before meeting the defendant, Chavarria met and sold heroin to James Wallace, who Chavarria knew to be a drug dealer. In early 2010, Chavarria introduced the defendant as a heroin supplier to Wallace. Around the same time, an acquaintance of the defendant met with Chavarria and Wallace to sell 100 grams of heroin. The acquaintance gave Wallace the heroin and Wallace gave Chavarria money for the heroin. After Chavarria was arrested for possession of heroin, he agreed to work as a confidential informant and testify against the defendant and Wallace. On several dates between July 16, 2010, and June 7, 2011, Chavarria and the defendant discussed drug prices and sold significant amounts of drugs to Wallace. On cross-examination, Chavarria stated that, initially, he did not provide the police with the defendant's name and gave a different source for the heroin. Chavarria sold drugs to Wallace on his own accord multiple times before the defendant became involved in sourcing the heroin.

¶ 5        Wallace testified that he sold heroin from 2010 to 2011. Wallace met Chavarria in 2009 and the defendant in 2010. Wallace purchased heroin from Chavarria on several occasions from 2010 to 2011. Chavarria's heroin was supplied by the defendant. During the last drug purchase, Wallace and Chavarria met at Dunkin' Donuts to complete the sale. Wallace gave the money to Chavarria, the defendant walked into the restaurant and Chavarria followed him. Soon after, Wallace observed Chavarria exchange his money for drugs with an unknown individual. After Wallace exited the Dunkin' Donuts, he was arrested and charged with criminal drug conspiracy, possession with intent to deliver, and armed violence. Regarding the resolution of these offenses,

2

the State asked, "[T]here's no agreement at this time, but you're hoping for a good deal; is that right?" and "you're cooperating in the hopes that you can get a better deal on that case; is that right?" Wallace responded, "Yes" to both questions.

¶ 6        On cross-examination, defense counsel asked Wallace about his "informal agreement." Counsel asked Wallace, "[y]ou haven't been given any specific offer or indication as to what's actually going to happen to you on this case, correct?" Wallace responded, "Right." The exchange continued,

"Q. But they do advise you that if you give them your full cooperation and testify in this case, that they will certainly consider that in disposing of the charges against you, correct?

A. Well, no, they haven't came to nothing like that. They say we have to see what happens. I wasn't promised anything.

Q. You are hoping for it?

A. Yes."

¶ 7        The court found the defendant guilty of one count of criminal drug conspiracy and not guilty of the remaining count of criminal drug conspiracy. The court denied the defendant's motion for a new trial and sentenced the defendant to 16 years' imprisonment. On November 1, 2016, the defendant filed an appeal.

¶ 8        On February 9, 2017, during the pendency of the defendant's direct appeal, the State filed a memorandum of disclosure indicating that the assistant state's attorney reviewed the file on January 27, 2017, and discovered that an offer was tendered to Wallace that "in exchange for [Wallace's] immunized testimony at trial in the above matter, [Wallace] would receive a sentence of ten (10) years incarceration ***, day for day credit to apply (*i.e.*, sentence to be served at 50%)."

3

The State disclosed that Wallace's response was "that the People may call [Wallace] at trial ***, that [Wallace] did not require immunity, and that the defense hoped [Wallace] would do better than the offer after [his] testimony."

¶ 9        On February 14, 2017, regarding the State's disclosure, counsel told the court that he had "informed [the defendant] of his options regarding post-conviction relief, about his options regarding a motion for new trial, and his options about what if any potential outcome might be, based upon further negotiations with the State's Attorney's Office, other than a petition for a new trial." Counsel stated that the "Defendant has requested that I not file any such petition and not pursue any further negotiation with the State's Attorney's Office as he is pursuing an appellate review of this matter."

¶ 10        On December 26, 2018, the defendant filed a petition for relief from judgment under section 2-1401, contending the court lacked jurisdiction and his judgment was void. The court denied the defendant's petition, finding that the contentions raised had been previously adjudicated prior to trial. On January 24, 2019, the State Appellate Defender filed their opening brief related to the defendant's direct appeal.[1] The Second District filed an order on July 18, 2019, which affirmed the defendant's conviction. *People v. Rojo*, 2019 IL App (2d) 161014-U, ¶ 30.

¶ 11        On November 4, 2020, the defendant filed a postconviction petition alleging, *inter alia*, the ineffective assistance of trial and appellate counsel for failing to investigate and raise a claim regarding the perjured testimony of Wallace concerning the State's offer of leniency for Wallace's testimony against the defendant, which was not disclosed until after the defendant's trial. In support, the defendant cited the trial transcripts of Wallace's testimony regarding the lack of

---

[1]The Second District's docket is not included in the record; however a reviewing court may take judicial notice of court records. See *People v. Johnson*, 2020 IL App (1st) 171638, ¶ 29.

agreement with the State and attached a transcript from February 14, 2017. The court appointed the public defender and advanced the matter to the second stage of proceedings.

¶ 12    On August 16, 2022, counsel filed an amended postconviction petition. Relevant to this appeal, the petition alleged that on January 27, 2017, the State disclosed Wallace's offer of leniency. Counsel attached a memorandum from the state's attorney's office dated February 7, 2017. The court granted the State's motion to dismiss the defendant's postconviction petition. The defendant appealed.

¶ 13                                    II. ANALYSIS

¶ 14    On appeal, the defendant argues that the court erred in dismissing his second-stage postconviction petition, which made a substantial showing of a constitutional claim. Specifically, the defendant contends he was prejudiced by the State's failure to disclose a witness's rejected offer of leniency or correct the witness's false testimony.

¶ 15    Under the Post-Conviction Hearing Act, a defendant may assert that the proceeding resulting in his conviction substantially denied his constitutional rights. 725 ILCS 5/122-1(a)(1) (West 2022). "The purpose of the postconviction proceeding is to permit inquiry into constitutional issues involved in the original conviction and sentence that were not, nor could have been, adjudicated previously on direct appeal." *People v. Lucas*, 203 Ill. 2d 410, 417-18 (2002). Issues that could have been raised on direct appeal, but were not, are waived. *People v. Pitsonbarger*, 205 Ill. 2d 444, 456 (2002).

¶ 16    Initially, we note that the parties assert that the defendant's claim is not barred by waiver.[2] We disagree. "Appellate review is generally restricted to what has been properly presented and

_____

[2]Because "[t]he question before a reviewing court is the correctness of the result reached by the lower court and not the correctness of the reasoning upon which that result was reached," we may affirm

5

preserved of record in the trial court. And a defendant's right to appeal must be exercised within the procedural framework established by law." *People v. Harrawood*, 66 Ill. App. 3d 163, 168 (1978). Moreover, the purposes of the waiver rule include

"(1) to insure that the trial court is informed of possible errors so that the court has an opportunity to correct those errors; (2) to give the reviewing court the benefit of the judgment and observations of the trial court with regard to the issues raised on appeal; (3) to prevent a defendant from objecting to that in which he has acquiesced ***; (4) to eliminate unnecessary reviews and reversals; and (5) to prevent the possibility of unlimited litigation." (Internal quotation marks omitted.) *Id.* at 166-67.

Additionally, review of an invited error is precluded on appeal. See *People v. Carter*, 208 Ill. 2d 309, 319 (2003) (under the invited error doctrine, an accused cannot request to proceed in one manner and then contend on appeal that the course of action resulted in error); see also *People v. Harding*, 2012 IL App (2d) 101011, ¶ 17 (reviewing courts generally refuse to consider claims resulting from rulings issued at the defendant's request). To allow a defendant to procure, invite, or acquiesce in a ruling by the circuit court, even if it is improper, and then contest that same ruling on appeal would offend notions of fair play and encourage defendants to become duplicitous. *People v. Ciborowski*, 2016 IL App (1st) 143352, ¶ 99.

¶ 17        In the present case, the State disclosed the offer of leniency on February 9, 2017, well before the appellate defender filed briefs on January 24, 2019. When brought to the court's attention, counsel told the court he "informed [the defendant] of his options regarding post-

---

for any basis in the record. (Internal quotation marks omitted.) *People v. Aljohani*, 2022 IL 127037, ¶ 28. Therefore, we need not address whether the court's finding that the defendant failed to make a substantial showing of a constitutional claim sufficient to warrant third-stage postconviction proceedings.

conviction relief, about his options regarding a motion for new trial, and his options about what if any potential outcome might be, based upon further negotiations with the State's Attorney's Office, other than a petition for a new trial[,]" yet the "Defendant ha[d] requested that [he] not file any such petition and not pursue any further negotiation with the State's Attorney's Office as he [was] pursuing an appellate review of this matter." Despite being given the opportunity to challenge the State's late disclosure, renew a motion for a new trial, and/or negotiate with the State, the defendant chose not to rectify the issue, but instead take a gamble on continuing with his appeal. Importantly, the defendant's choice to forgo pursuing a timely challenge to the late disclosure prevented the circuit court from hearing or correcting the issue. The defendant further did not raise the issue in his direct appeal. Instead, the defendant did not pursue his claim until after the circuit court denied his section 2-1401 petition and his direct appeal was resolved unfavorably. See *Rojo*, 2019 IL App (2d) 161014-U, ¶¶ 30-33; see *Harrawood*, 66 Ill. App. 3d at 166. The defendant cannot now claim an error given his choice to proceed in a manner which waived a challenge to the claim. See *Carter*, 208 Ill. 2d at 319. To find otherwise would encourage "objecting to that in which he has acquiesced," "unnecessary reviews and reversals," and "the possibility of unlimited litigation." (Internal quotation marks omitted.) *Harrawood*, 66 Ill. App. 3d at 167. Therefore, having waived the issue with the circuit court, the defendant cannot seek reversal based on that issue. See *id.*; see also *Harding*, 2012 IL App (2d) 101011, ¶ 17; *Ciborowski*, 2016 IL App (1st) 143352, ¶ 99.

¶ 18                                              III. CONCLUSION

¶ 19          The judgment of the circuit court of Du Page County is affirmed.

¶ 20          Affirmed.

7